**Lee M. POWELL, III, Plaintiff-Appellant,**

v.

**CITY OF KEY WEST, FLORIDA, et al.,
Defendants-Appellees.**

**No. 29159.**

United States Court of Appeals,
Fifth Circuit.

Nov. 3, 1970.

Roger A. Bridges, Sams, Anderson, Alper & Spencer, Miami, Fla., for plaintiff-appellant.

Smathers & Thompson, Richard M. Gale, David S. Batcheller, Miami, Fla., Charles C. Papy, Jr., Coral Cables, Fla., M. Ignatius Lester, Key West, Fla., for defendants-appellees.

Before TUTTLE, BELL and GOLDBERG, Circuit Judges.

TUTTLE, Circuit Judge:

On March 17, 1963, Lee M. Powell, III, while sailing a catamaran sail boat on navigable waters of the United States between Stock Island and Boca Chica Key, Florida, was injured when the mast of his sail boat came into contact with an overhead high voltage electrical transmission line owned and operated by the city of Key West, Florida, acting through its utility board. The permit to construct and maintain this high voltage electrical transmission line at this place, issued by the United States Army Corps of Engineers, required that it be a minimum of 25 feet above mean high water. It is not disputed that at the time the accident occurred the line was no more than 20 feet and 8 inches above high water level.

Mr. Powell, who resided in South Carolina, obtained counsel in that state to attempt to obtain compensation for his injuries. There followed considerable correspondence between such counsel and counsel representing the city authorities and a representative of Cosmopolitan Mutual Insurance Company, an insurance carrier for the city of Key West, Florida, which negotiations extended for more than a year following the injury. According to the record before the court at the time of the district court decision at no time during this period did the insurance carrier or the City or its utility board seek to rely upon either a purported thirty day period for notifying a city of a claim or upon a purported twelve months statute of limitations for such an action. However, on October 30, 1964, the insurance carrier declined to deal with the claim further, basing its action on Florida Statutes 95.24 and 95.241, F.S.A., dealing with such requirements as mentioned above. In spite of this rejection, South Carolina counsel had further correspondence with counsel for the utility board indicating that Key West insurance company was still in correspondence with appellant's counsel, at least as late as November 9, 1964. The record does not disclose that this insurance company or the city of Key West or the utility board at any time within the period of one year from the accident raised the issue of the one year statutory limitation.

In any event, the present suit was filed by other counsel on May 8, 1969, a little more than six years following the accident. The complaint was filed under the general admiralty laws of the United States.

Subsequently, the city of Key West filed a cross claim against the utility board, and also the city filed a motion for leave to file and serve a third party complaint against Cosmopolitan Mutual Insurance Company, alleging that it had wrongfully refused to defend the city or to pay any judgment which might be rendered against the city in the plaintiff's action. The trial court denied the city's motion to file this third party complaint.

The defendants in the district court filed a motion for summary judgment based on the ground of laches. The defendants take the position that the statutory period applicable, if the statute of limitations were to control, is four years. They contend that their motion for summary judgment was supported by affidavits, which, when considered with the admitted documentary evidence before the court, eliminated an issue of fact, but, on the other hand, required a finding of laches as a matter of law. The parties all recognize that laches is

the proper principle to apply in a situation such as this rather than the statute of limitations. The appellees, as might be expected, do point to the fact that the action was not brought for more than two years beyond the period which would bar it were it one controlled by the four year statute of limitations. As to this, the appellant calls our attention to the language of this court's opinion authored by Chief Judge Brown in Vega v. The Malula, 5 Cir., 1961, 291 F.2d 415, 418:

> "We think all have been too mechanically preoccupied with the element of delay in the sense of time beyond some applicable statute of limitations. No attention has been paid to the equally important element of harm from the delay. 'Laches is much more than time. It is time plus prejudicial harm, and the harm is not merely that one loses what he otherwise would have kept, but that the delay has subjected him to a disadvantage in asserting and establishing his claimed right or defense.' Point Landing, Inc. v. Alabama Drydock & Shipbuilding Co., 5 Cir., 1958, 261 F.2d 861, at page 865."

In Vega, as the court pointed out at page 419,

> "On the surface the respondent made a plausible showing of prejudice. Years had gone by. The vessel was sunk and the equipment in question was long since lost. Finally, a seaman who was responsible for maintenance of this cargo gear was no longer living."

But then the court said:

> "The trouble was that this did not make any difference. The respondent through his responsible representatives knew not only of the occurrence but knew as well that it was a patent case of unseaworthiness as to which it had no defense on liability."

In the case before us, the Appendix submitted to the court shows clearly that there were two eye witnesses to the accident. There were two men who were fishing in a boat nearby when Powell's catamaran collided with the high tension line, which almost caused his electrocution. Affidavits from these two witnesses indicate that they were available for the giving of testimony at the time of trial. Moreover, it is undisputed that the city was notified of the cause of action immediately after the occurrence, and it undertook to make a full and complete investigation and, in fact, either the city or the board, notified responsible United States officials, the United States Army Engineers, that the city electric system "will take the necessary action to raise the sag of the line to the required clearance of twenty-five feet." This was all done within five weeks of the injury to Mr. Powell.

The city and its utility board undertook to establish the defense of laches by showing two things: the first was an affidavit signed by Charles C. Papy, Jr., who stated that he was counsel for the defendants. He then stated "the city of Key West, Florida, had insurance coverage at the time the accident, which is the subject matter of this litigation, occurred, but the insurance carrier has denied coverage to the city and is not now defending the city in this lawsuit on the grounds of late reporting of the accident. Attached hereto is a copy of a letter received from the insurance carrier, advising the city that they were withdrawing from the defense of the city in this case."

The letter attached from the Cosmopolitan Mutual Insurance Company says, "The matter has now proceeded to the point where it is our opinion that there was obvious delay in notice of this matter to the company, in contravention of the terms and conditions of the policy. It appears obvious that the city of Key West knew as far back as April of 1963 of the accident that is involved in this case, and did not report this matter to this company until May 22, 1969, a period of approximately six years and two months.

"We are, therefore, disclaiming any and all liability under the policy, and

further will no longer defend the city of Key West in this matter for the reason of the delay in notice of this accident to the company."

The other proof which the defendants below used as a basis for their motion for summary judgment, was an affidavit of Joseph Roberts, who deposed, according "to the best of his knowledge and belief." [1]

In this posture the trial court granted the motion for summary judgment. The court stated:

"It appears from the motion for summary judgment, pleadings and af-

1. The affidavit is here reproduced in full:

AFFIDAVIT OF JOSEPH ROBERTS
(Filed October 9, 1969)

STATE OF FLORIDA } SS.
COUNTY OF DADE }

Personally appeared before me JOSEPH ROBERTS, who, being by me first duly sworn, deposes and says that he is the Manager of the Utility Board of the City of Key West, Florida, and that the facts contained within this affidavit are true to the best of his knowledge and belief.

That the Plaintiff in this lawsuit, Lee M. Powell, III, alleges that he was injured on March 17, 1963, when a sailboat he was operating came in contact with electrical transmission wires in the area of Boca Chica Island, which said wires were owned by the City of Key West, Florida, and operated on its behalf by the Utility Board of the City of Key West, Florida. The Plaintiff does allege that the electrical wires at the time of the accident, March 17, 1963, were erected and maintained in violation of permits issued by the United States Army Corps of Engineers, further alleging negligence in maintenance and design, failure to warn and other allegations contained in the Complaint.

That the electrical wires referred to by the Plaintiff were erected in the year 1952 under a contract for erection of what is known as the Big Pine Key Line. That this line was designed prior to erection by R. W. Beck who was then the sole owner of R. W. Beck & Associates, and was constructed by Roy Richards Construction Co., a Georgia corporation, and bonded by United States Fidelity & Guaranty Co. That the entire responsibility for designing, supervising and inspecting the completion of the job, including the procurement of permits was undertaken by R. W. Beck, the sole owner of R. W. Beck & Associates, who further contracted to furnish yearly inspections of the line.

That the Utility Board of the City of Key West and the City of Key West were made aware of this accident which occurred March 17, 1963, immediately after the accident. That, however, due to the plaintiff's abandonment of any action, the City of Key West, by and through the Utility Board of the City of Key West, did not make any formal claim for indemnity against R. W. Beck and/or R. W. Beck & Associates. Roy Richards Construction Company, a Georgia corporation, or United States Fidelity & Guaranty Company, which company issued a bond in the sum of $148,848.00 inuring to the benefit of the City of Key West and/or the Utility Board of the City of Key West for any breaches of contract during the construction of the line.

That R. W. Beck died July 22, 1968, in Denver, Colorado; his estate was probated in the Superior Court, King County, State of Washington, No. E–195857, and the time has expired in which to file claims against the estate of R. W. Beck. That Roy Richards Construction Company, a Georgia corporation, was dissolved, the liabilities assumed by Roy Richards & Associates, a Kentucky corporation, and due to the delay in the plaintiff having prosecuted the action, formal notice was not given to the successor corporation or bonding company for this claim for indemnity under the terms of the contract of erection.

That the Big Pine Key Line was the subject matter of a lawsuit in the United States District Court, Miami Division, Action No. 67–868, wherein Stephen Reneckar was plaintiff and The City of Key West, Florida, et al., were defendants, in which action it was discovered that due to the passage of time many documents pertaining to the line have been destroyed or otherwise not available creating problems in assembling the evidence with which to properly defend this lawsuit.

Further, affiant sayeth not.

/s/ Joseph Roberts
Joseph Roberts

SWORN TO BEFORE ME and subscribed in my presence this 1st day of October, 1969.

/s/ Susan A. Hawkins
(Seal)   Notary Public, State of Florida at Large

My commission expires: June 26, 1972.

fidavits filed herein, that, clearly and without contradiction, the plaintiff was involved in the accident which occurred March 17, 1963, for which this plaintiff did not file suit until May 8, 1969, a period of over six years after the accident occurred. In the opinion of this court the defendants have been and shall continue to be prejudiced by the plaintiff's inordinate delay *in that the defendants have lost insurance coverage that otherwise would have applied to the plaintiff's injury.* The court, in making this ruling has considered the fact that the Florida statutes of limitations, F.S.A. 95.11 and 95.24 are not controlling but are matters for the court's consideration when applying the doctrine of laches. Akers v. State Marine Lines, Inc., 344 F.2d 217, 5 Cir., 1965.

"The plaintiff has not alleged or proved any sufficient excuse for the delay in filing suit, *nor has the plaintiff shown any lack of prejudice to the defendants by virtue of his delay in enforcing his rights. The defendants have shown prejudice.* The court is of the opinion that the doctrine of laches should be applied to the plaintiff. It appears to the court, therefore, that there remains no genuine issue of material fact, and that defendants, utility board of the city of Key West, and the city of Key West, Florida, are entitled to judgment as a matter of law." (Emphasis added.)

Neither of the affidavits supporting the motion for summary judgment begins to satisfy the requirements of Rule 56(e) of the Federal Rules of Civil Procedure, which provides:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

The reason for such rule is apparent from the record in this case. First, as to the affidavit of counsel, Mr. Papy,

that "the city of Key West, Florida, had insurance coverage at the time the accident, which is the subject matter of this litigation, occurred." No effort is made to attach the policy or even the formal parts showing the nature of the coverage, or that it would protect the city for public liability claims or the limits of liability. Moreover, the rest of the affidavit, "But the insurance carrier has denied coverage to the city and is not now defending the city in this lawsuit on the grounds of late reporting of the accident," falls far short of containing a statement of fact which the trial court made to the effect that "the defendants have lost insurance coverage that otherwise would have applied to the plaintiff's injury." It is impossible for the trial court to know from the document before it that the city had or had not lost insurance coverage, for, in fact, counsel did not even make such a statement of fact. He stated only that the insurance carrier had denied coverage and was not defending the suit. The trial court was not in a position to test the correctness of counsel's implied, although not expressed, conclusion that the city had lost coverage which it otherwise would have had. Moreover, there is no possible basis for the trial court to assume, since the city gave no notice to the insurance company until 1969, that, had it given notice within the four year statute of limitations, the insurance company would not, with equal justification, have declined to defend on the ground of a four year delay in giving notice under the policy. There is nothing in this record to indicate that, had the city given notice a few days short of the four year statutory period, the city would have had the coverage which the trial court now found it lost by reason of the delay in filing this complaint.

Then with respect to Mr. Roberts' affidavit, although the trial court did not spell out the matters therein stated as part of the "prejudice" which the court found the defendants had shown, it is to be noted that appellees rely strongly on

this affidavit to support the trial court's finding of prejudice.

As already indicated, this affidavit also fails to comply with the requirements of Rule 56(e). Mr. Roberts does not depose upon personal knowledge; he does not state that he held the position of manager at the time of the occurrences which he discusses; his affidavit principally relates to either conclusions or matters occurring in other states without any supporting documents to support them; but most of all, completely fails to include any statement to the effect that the city had any claim over against either the contracting company that built the line in 1952, or the parties who designed it or that the "sag" had not occurred following the fulfillment of any obligations undertaken by either of these parties. No contract spelling out the obligations of either Roy Richards Construction Company or R. W. Beck & Associates or the nature of the bond issued by the United States Fidelity & Guaranty Company is attached to the affidavit. There is thus no basis for a finding that the city had lost the opportunity to hold these other parties responsible, if it ever existed.

■ Recognizing full well that the defense of laches is one that is addressed largely to the discretion of the trial court, and further recognizing that the same trial court may well arrive at a similar conclusion upon a full development of facts at issue, we must bear in mind what this court stated in Vega, supra, that it is "nearly always unsatisfactory especially in admiralty where its traditional liberality of procedure seeks out the intrinsic justice of a cause with slight concern for procedural niceties—of trying to determine laches on the basis of the face of the allegation of the libel," 291 F.2d 415 at 416. The same must be said when the trial court acts on the basis of a motion for summary

judgment which is so completely lacking, as is the case here, of a factual basis for applying this defense. It is difficult to understand the statement of the trial court that "nor has the plaintiff shown any lack of prejudice to the defendants by virtue of his delay in enforcing his rights." The plaintiff has shown, by attaching affidavits from the only two eyewitnesses that they were alive and well and able to testify, and it is admitted by the documents of record that the city fully investigated the accident and found the defect which caused the injury to the plaintiff to have existed. Even were the affidavits of the defendants adequate to raise an issue of fact as to prejudice, this is all they would have done because there is clear proof on behalf of the plaintiff from which the trial court could have found a complete absence of prejudice by reason of the delay.

■ As concerns the question of the necessity of proving separately and independently an excuse for the delay and prejudice, we note what has been said by this court, again speaking through Chief Judge Brown's felicitous expression:

"Although frequently classified as a separate element, the inexcusability of the delay, cf. Gardner v. Panama R. R. Co., 1951, 342 U.S. 29, 30–31, 72 S. Ct. 12, 13, 96 L.Ed. 31, 36, 1951 A.M. C. 2048, is closely entertwined with the predominant factor of detriment or lack of detriment, and what is a thin excuse may turn out to be bearable because no harm is suffered. Fidelity & Casualty Co. v. C/B Mr. Kim, 5 Cir., 1965, 345 F.2d 45, 51, 1965 A. M.C. 1944."

■ We conclude that this case was not ripe for summary judgment. It must therefore be

Remanded for further proceedings not inconsistent with this opinion.