500 F.2d 628
 John M. WATZ, Plaintiff,
v.
ZAPATA OFF-SHORE COMPANY, Defendant, v. EATON YALE & TOWNE,
INC., Defendant Fourth-Party-Plaintiff-Appellee,
v. CAMPBELL CHAIN COMPANY, Defendant
Fourth-Party-Defendant-Appellant.
 No. 73-2162.
 United States Court of Appeals, Fifth Circuit.
 Sept. 16, 1974.
 
 John G. Tucker, Beaumont, Tex., for defendant fourth-party-defendant-appellant.
 James W. Mehaffy, Dewey J. Gonsoulin, Beaumont, Tex., for defendant fourth-party-plaintiff-appellee.
 Before BELL, THORNBERRY and DYER, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 Following an interlude of nearly four years we are called upon for renewed consideration of this admiralty dispute. Reference is made to this Court's earlier opinion, Watz v. Zapata Off-Shore Co., 431 F.2d 100 (5th Cir. 1970), wherein a detailed factual summary and discussion of substantive issues may be found.
 
 
 2
 The sole question now before us is whether the district court properly rejected on remand the defense of laches asserted by fourth-party defendant Campbell Chain Company (Campbell). We conclude that the district court's findings of fact are not clearly erroneous and that its judgment is correct. Therefore we affirm. The history of this litigation is lengthy, but the material events are now either at rest or free from serious dispute. We shall recite them only insofar as they are essential to an understanding of our decision.
 
 
 3
 During late 1956 or early 1957 Campbell manufactured a steel chain. In early 1957 Campbell sold this chain to Eaton Yale & Towne, Inc. (Eaton), who incorporated it into a chain hoist. Subsequently, Eaton sold the assembled hoist to Levingston Shipbuilding Company, plaintiff Watz' employer. On October 12, 1959 Watz was using the hoist to lift pipe aboard a vessel owned by Zapata Off-Shore Company (Zapata). The chain failed and the load dropped, injuring Watz.
 
 
 4
 Having collected workmen's compensation benefits, Watz did not sue until May 5, 1967, when he filed his original complaint against Zapata. On March 8, 1968 Zapata impleaded Eaton, and on May 3 Eaton impleaded Campbell. Watz quickly amended to name Eaton as a primary, as well as third-party, defendant.
 
 
 5
 The district court found the vessel unseaworthy, found both Eaton and Campbell negligent, entered judgment for Watz against both Zapata and Eaton, awarded Zapata contribution against Eaton for fifty percent of the judgment, and awarded Eaton contribution against Campbell for one-half of this fifty percent. The liabilities of Eaton and Campbell derived, in pertinent part, from findings that Eaton negligently failed to discover a defective chain weld before delivering the hoist and that Campbell negligently manufactured the chain.
 
 
 6
 A panel of this Court reversed as against Zapata on the ground that the vessel had been withdrawn from navigation. This left standing Watz' judgment against Eaton, but now for the full amount. With respect to Eaton's claim for contribution against Campbell, the chain company argued that the claim was barred by laches. We remanded for further factual development, findings, and legal conclusions concerning Campbell's asserted defense. Thereafter Eaton paid the full amount of the judgment, a hearing was held, and the district court concluded that Campbell's laches defense was not a valid one. Judgment was entered in Eaton's favor for one-half of the sum paid to Watz, and Campbell now appeals.
 
 
 7
 In its brief Campbell raises a number of points[1] that may be synthesized into two main contentions: First, Campbell argues that the district court's findings against the existence of laches lack evidentiary support and are therefore clearly erroneous. Alternatively it maintains that those findings, even if supported by minimal evidence, are tainted by the application of erroneous legal principles concerning timely notice to a potential collateral defendant and the allocation of the burden of proof incident to sustaining or defeating a laches defense. We turn first to the factual issues.
 
 I.
 
 8
 Some of the challenged findings were made by the district court at the first trial, while the balance were made following this Court's remand. At the first trial the district court found that Eaton received notice of the accident from Zapata's insurance carrier on April 25, 1960. By August 1961 Eaton knew that a claim might be asserted against it and obtained the hoist for inspection. By the end of October Eaton had subjected the chain to certain strength tests; yet Eaton did not obtain the link that later proved defective until a week before trial. Since its tests revealed no defects, Eaton apparently assumed for some time that it had no liability. Nevertheless, the district court found on remand that as early as January 1962 Eaton requested its insurer to notify Campbell of the latter's possible liability. Campbell's agents testified that no notice was received, however, until April 1968. Similarly, the district court found no evidence indicating that the requested notification was ever given.
 
 
 9
 Campbell now contends that, in view of the gap of almost seven years between the notice to Eaton of possible liability and Eaton's notice to Campbell, we must find Eaton's claim for contribution barred by laches. Campbell seeks to advance its position with uncontradicted testimony that certain of its manufacturing and testing records dating back to 1956 and 1957 were destroyed in good faith during the interim when it was without notice. According to Campbell's evidence these records would have provided the name of the steel supplier, various testing procedures and results, and the name of the welder who fabricated the chain. Campbell asserts that the testing materials, had they been available at trial, would have disclosed whether or not quality control systems were in proper order at the time of manufacture. The welder's testimony purportedly would have been relevant to these same issues. Finally, Campbell states that Eaton's delay in giving notice of a possible claim deprived it of the opportunity to implead the steel supplier, or to defend on the theory that the chain was not even Campbell's.
 
 
 10
 We find these contentions to be without merit. As the district court determined, and as this Court recognized on the prior appeal, Campbell's liability flowed but from one variety of fault in a sequence of derivative negligence. We reiterate the earlier panel's reasoning that while the testing materials might have permitted the district court to make specific findings on the number and adequacy of Campbell's tests, the 'evidence did show and the district court did find . . . that the original weld on the link in question was defective.' 431 F.2d at 119. This Court noted that
 
 
 11
 once it was proved that a defective weld had occurred during the manufacture of the chain by Campbell, we believe that the district court sitting as a finder of fact could reasonably infer negligence from that circumstantial evidence.
 
 
 12
 Id.
 
 
 13
 In this case the district court so found, and the parties exhausted the issue on the prior appeal. On remand, moreover, Campbell's plant manager, Mr. Gauntlett, testified from personal knowledge about the tests employed by Campbell. He stated that he knew the chain had been subjected to standard inspection procedures and that all strength requirements had been met or exceeded; otherwise, he testified, the chain would not have been sold. Eaton, however, presented expert testimony that other tests were feasible at the time of manufacture capable of discovering the particular defect in the link weld-- the presence of foreign matter. From this evidence, which merely repeated the proof at the first trial, the district court might have found Campbell negligent in failing to perform these additional tests. That it chose not to do so in the absence of the original records is immaterial, for it is plain from the record that an effort by Campbell to shift its negligence liability-- whether through test records, the identity of the steel supplier, or the welder's testimony-- would have been unavailing. Likewise unavailing is Campbell's suggestion, raised now for the first time, that the records would have shown that Campbell did not manufacture the chain. In this respect it is sufficient to note that Campbell admitted manufacturing the chain in its answer to Eaton's fourth-party complaint.
 
 
 14
 To the foregoing record the district court applied this Circuit's oft-repeated criteria for determining the applicability of the doctrine of laches: a delay in asserting a right or claim; the issue whether or not the delay is excusable; and the question of undue prejudice to the party against whom the claim is asserted. Watz v. Zapata Off-Shore Company, 431 F.2d 100, 111 (5th Cir. 1970); McMahon v. Pan American World Airways, 297 F.2d 268, 270 (5th Cir. 1962). Although it made no specific findings concerning an excuse for Eaton's failure to notify Campbell until shortly before the impleader, the district court did find that 'Campbell Chain Company was not prejudiced by reason of any delay on the part of Eaton Yale & Towne in notifying Campbell Chain Company of the claim.' This finding was based on the court's inference, drawn from the evidence, that even if Campbell's records had been available at trial, 'the trial court would have made the same findings that the defect in the chain occurred in the manufacturing process, rather than as a result of any imperfection in the steel itself as supplied to Campbell Chain Company.' We conclude that these findings of fact are solidly based on probative evidence, and we affirm them entirely.
 
 II.
 
 15
 Yet despite the strength of the district court's findings, Campbell would have us reverse on the basis of either of two proffered legal arguments. On one hand, Campbell asserts that the delayed notice gave rise to a presumption of prejudice, and that the district court improperly ignored the presumption by assigning to Campbell the burden of establishing the laches defense. Campbell states that this error is evident in that the court rejected laches even though no evidence was presented and no findings were made on the issue of excuse. In the alternative, Campbell stresses the equitable characteristics of laches by contending that the doctrine affords a defense in a case in which there has been no delay in pressing a matured claim, but simply a delay in giving notice of a potential claim. For the reasons that follow, we again conclude that we cannot give effect to Campbell's contentions.
 
 
 16
 In support of its argument that the district court incorrectly assigned the burden of proof, thereby giving Eaton the benefit of any theoretical 'equal inferences,' Campbell extracts from the court's findings of fact the statement that 'the only evidence by Campbell Chain Company as to any prejudice caused by the delay in being notified of the claim is that Campbell Chain Company would have had its records available to substantiate Mr. Gauntlett's testimony had it been notified earlier.' It is Campbell's contention that this statement, when taken together with the absence of findings on the issue of excuse, demonstrates that the district court failed to note that the analogous statute of limitations had run in Campbell's favor.[2] It is true, of course, that the court must look initially to the analogous statute in assigning the burden of proof on the question of laches. Flowers v. Savannah Machine & Foundry Co., 310 F.2d 135 (5th Cir. 1962). Campbell's argument assumes, however, that in this case the statute would have begun to run against Eaton's claim for contribution either at the time of the accident or upon Eaton's receipt of notice, as opposed to the time at which Eaton was adjudged liable to Zapata or the date upon which Eaton paid the judgment. We need not decide which of these times must control, for we may assume that Campbell is correct in its contention that Eaton bore the burden to eliminate the elements of laches. Even so, it is clear from a review of the record in its entirety that Eaton dutifully undertook both the burden of producing evidence and the burden of persuasion. This is best illustrated by the fact that on remand Eaton opened and closed the testimony and aggressively elicited both from its own witness and from Campbell's witnesses evidence supportive of its opposition to the defensive issue.[3] Cognizant as we must be of the fact that the finer niceties of burden of proof are less easily misunderstood in nonjury trials, we simply cannot say from the evidence as a whole that we are 'left with the definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); Lentz v. Metropolitan, Life Ins. Co., 428 F.2d 36 (5th Cir. 1970).
 
 
 17
 Similarly, we find no merit in Campbell's contention that it was incumbent upon Eaton to produce specific evidence of an excuse for the delay. We need only repeat what the panel stated in its earlier opinion in regard to the fact that our recent decisions have relaxed the importance of proving excuse:
 
 
 18
 Since proof of either absence of prejudice or excuse for delay will repel a claim of laches, we conclude that the absence of prejudice in this case justifies the district court's decision not to dismiss the suit for laches.
 
 
 19
 431 F.2d at 112. See Powell v. City of Key West, 434 F.2d 1075 (5th Cir. 1970); Crews v. Arundel Corp., 386 F.2d 528, 530 (5th Cir. 1967); Molnar v. Gulfcoast Transit, 371 f.2d 639, 642 (5th Cir. 1967); Akers v. State Marine Lines, Inc., 344 F.2d 217, 220 (5th Cir. 1965); Vega v. The Malula, 291 F.2d 415, 418 (5th Cir. 1961).
 
 
 20
 Our disposition of the previous issues renders it unnecessary to meet Campbell's request for a definitive denomination of the point at which the risk of laches will attach in impleader situations. We recognize that because laches is a creature of equity the trial judge enjoys a wide area of discretion. Kelly v. Smith, 485 F.2d 520, 526 (5th Cir. 1973), cert. denied sub nom., Chicot Land Company, Inc. v. Kelly, 416 U.S. 969, 94 S.ct. 1991, 40 L.Ed.2d 558 (1974); Powell v. Cith of Key West, supra. We also recognize that persuasive cases can be made for imposing on a knowledgeable defendant an early duty to alert a potential collateral tortfeasor, e.g., Long Island RR v. The New York Central No. 25, 182 F.supp. 100, 104-105 (S.D.N.Y.1960), even though that defendant's right or claim does not technically arise until he pays a judgment or is at least held liable in his own account. See Boris v. Moore, 152 F.Supp. 602, 604 (E.D.Wis.1957), affirmed sub nom., Boris v. Hamilton Mfg. Co., 253 F.2d 526 (7th Cir. 1958); J. Moore, Federal Practice P14.09 (1974); C. Wright & A. Miller, Federal Practice and Procedure 1447 (1971). At the same time, however, we feel that it would presently be unfair to announce for courts and litigants a rule that might have the unintended effect of rigidifying the sensitive business of loss distribution. We shall therefore reserve our opinion for a case in which the issue is squarely presented.
 
 
 21
 Affirmed.
 
 
 
 [1]
 One of these points-- that the district court on remand overlooked the law of the case as established by the prior panel opinion-- may be disposed of summarily. Campbell contends that 'it was settled that laches by reason of delayed notice was a defense, that the trial court was bound by this ruling, and that the question was not subject to be relitigated.' Brief of Appellant Campbell Chain Company, page 5. We simply note that we are unable to strain this construction from the Court's opinion, which merely held that laches, as a question of fact, was a proper issue for determination on remand. See 431 F.2d at 118
 
 
 [2]
 At the first trial and on the prior appeal Campbell argued that the timeliness of Eaton's claim for contribution should be governed by state law. The Texas statute permits personal actions to be brought within two years following the accrual of the claim, Vernon's Tex.Rev.Stat.Ann. art. 5526 (1958), whereas the federal Jones Act, 46 U.S.C. 688 (1970), adopts for actions based on the death or injury of seamen the FELA limitation of three years. Because it found admiralty jurisdiction over Watz' claim against Zapata, the earlier panel concluded that laches was the appropriate standard governing that claim. It therefore followed that the burden of proof on laches should be assigned with reference to the Jones Act period, although the decision to remand made it unnecessary to decide when that period began to run against Eaton. See 431 F.2d at 111. Rejecting Campbell's assertion that Eaton's claim was barred by state law, the panel simply stated that 'since we have found admiralty jurisdiction . . . laches is the applicable standard.' Id. at 118 n. 21. In view of our disposition of this appeal, we express no opinion on that statement's accuracy to the extent that it may contain assumptions concerning the properly analogous statute of limitations with respect to third-party claims whose maritime connections are essentially incidental or fortuitous
 
 
 [3]
 We construe the district court's statement as nothing more than a comment on the weakness of Campbell's evidence of prejudice, see part I supra, rather than a misallocation of the burden of proof
 Nor do we seriously concern ourselves with Campbell's contention that the delay created an evidentiary presumption of prejudice. Such a presumption, in a true sense, would exist only in the absence of evidence to rebut the presumed fact. Foundation Co. v. Henderson, 264 F. 483 (5th Cir. 1920). Once rebuttal evidence came in, and we have indicated our opinion that such evidence was abundant, the risk would shift to Campbell to produce additional evidence to salvage its case. Otherwise Campbell would be left to rely on the weak natural inferences from the evidence already introduced, and we think it highly doubtful that those inferences could have precluded findings in Eaton's favor in any event. See generally C. McCormick, Evidence 342, 345 (2d ed. 1972).