**SAVE OUR WETLANDS, INC. (SOWL)**

v.

**Early RUSH et al.**

**Civ. A. No. 75–3710.**

United States District Court, E. D. Louisiana.

Dec. 7, 1976.

Edward H. Booker, New Orleans, La., for plaintiff.

Richard J. McGinity, New Orleans, La., for LeMieux.

John R. Schupp, Robert L. Boese, Jr., Asst. U.S. Attys., New Orleans, La., for Rush, Callaway and Train.

## ORDER

CHARLES SCHWARTZ, District Judge.

This matter came on for hearing on November 5, 1976, on motion by the federal defendants to dismiss this action on the ground that it is barred by the application of laches, and to dismiss under Rule 12(b)(6) F.R.Civ.P., for failure to state a claim upon which relief can be granted. After due consideration of the argument and memoranda of counsel, the record, and the law, the Court finds as follows:

### I.

### LACHES

The federal defendants claim that plaintiff's cause and/or right of action is barred by the application of laches due to inexcusable delay on the part of plaintiffs in filing this lawsuit, and resulting in undue prejudice to the defendants.

It is well established that a defense of laches can be properly asserted in environmental litigation. *Lathan v. Volpe,* 455 F.2d 1111 (9th Cir. 1971); *I–291 Why? Assn. v. Burns,* 372 F.Supp. 223 (D.Conn.1974); *Smith v. Schlesinger,* 371 F.Supp. 559 (C.D. Cal.1974); *Minnesota Public Research Group v. Butz,* 358 F.Supp. 584 (D.Minn. 1973); *Clark v. Volpe,* 342 F.Supp. 1324 (E.D.La.1972) aff'd 461 F.2d 1266 (5 Cir.).

However, laches is not judicially favored as a defense in environmental cases. *Arlington Coalition on Transportation v. Volpe,* 458 F.2d 1323, 1330 (4th Cir. 1972); *Environmental Defense Fund v. Tennessee Valley Authority,* 468 F.2d 1164 (6th Cir. 1972); *Nolop v. Volpe,* 333 F.Supp. 1364 (D.S.D.1971).

For laches to apply as a defense, the defendants must first prove: (1) that plaintiffs delayed in asserting their claim, (2) that this delay was inexcusable, (3) that the delay resulted in undue prejudice to the defendants. *Watz v. Zapata Offshore Co.,*

500 F.2d 628 (5th Cir. 1974); *Ecology Center of La. v. Coleman*, 515 F.2d 860 (5th Cir. 1975).

■ It has been held that for the purposes of laches, the delay time should be computed from the issuance of the final Environmental Impact Statement (EIS) to the time of filing suit. *Concerned About Trident v. Schlesinger*, 400 F.Supp. 454, 479 (D.C.D.C.1975); *Essex Co. Preservation Assn. v. Campbell*, 399 F.Supp. 208, 219 (D.Mass.1975).

In the case at hand the final EIS for the Lake Pontchartrain Hurricane Protection Project (LPP) was released by the Corps of Engineers in January, 1975; plaintiffs filed this suit on December 5, 1975. Plaintiffs could not have possibly filed suit alleging an insufficient EIS (which is one of the principal bases for plaintiffs' cause of action) until the EIS was in fact released to the public, thus the maximum period of delay in filing suit was about 10 months.

■ This period of delay was not inexcusable, but on the contrary was reasonable considering the facts of this case. A public hearing was held by the Corps of Engineers on February 22, 1975, as required by law, to obtain permits under Section 404 of the Federal Water Pollution Control Act (FWPCA) for dredging and spoil disposal in wetland areas. This public meeting was expanded under the direction of Col. E/R. Heiberg, III, New Orleans District Engineer, to include a public hearing on the entire LLP.[1] The purpose of the hearing, as expressed by Col. Heiberg, was in fact to gain input from the public to aid his recommendation as to the ultimate disposition of

the LPP. See "Record of Public Meeting, Lake Pontchartrain and Vicinity Hurricane Protection Project," published June, 1975, Corps of Engineers; pp. 3–5. Unless this public meeting is seen as a total sham, the plaintiffs are due the reasonable belief that their ideas and the ideas of others concerning the ultimate disposition of the LPP would be taken into account without the necessity of filing a complicated and expensive environmental lawsuit. It was not until August 22, 1975 that Col. Heiberg issued a "Statement of Findings" in which he expressed official intent to proceed with the project as originally planned. The Environmental Protection Agency gave final administrative approval on October 1, 1975. Thus it is clear that the decision making process in part was still in effect at least until August 22, 1975. Plaintiffs filed suit only after it was clear that the final word had been given to proceed with the LPP as planned. Under these circumstances, any delay in filing suit is found to be excusable.

■ In order for laches to apply, the defendants are also required to show undue prejudice. Defendants claim that they are prejudiced by the amount of money which has been expended on the LPP between January, 1975 when the EIS was released, and December 5, 1975, when plaintiffs filed this suit. Work had commenced on the LPP long before the EIS was released, and work has continued since plaintiffs filed this suit and it is still continuing. It is clear that this money would have been expended even if plaintiffs filed suit in January of 1975.[2] This does not constitute undue prejudice. The defendants admitted at the hearing that this delay in filing suit did

---

1. The record of the public meeting describes this hearing on the title page as one "TO DISCUSS ALL ASPECTS OF THE LAKE PONTCHARTRAIN, LOUISIANA, AND VICINITY HURRICANE PROTECTION PROJECT AND TO DISCUSS THE PROCEDURES FOR THE DISPOSAL OF DREDGED MATERIALS."

2. The Corps of Engineers has provided a breakdown of the funds spent on the LPP from January 1975 through September 1976, which includes funds spent some 10 months after this suit was filed. This cost breakdown has been attached to this Order. It shows construction

costs of $15,144,000, engineering and design costs of $2,653,000, and supervision and administration costs of $657,400 for a total of $18,454,400. Plaintiffs have indicated that they do not oppose the Chalmette levees, the New Orleans West Unit, the Mandeville Unit, or the Seabrook Complex. Thus, $2,502,700 of expenditure has been on unopposed projects, of which $1,513,200 is for construction costs. Plaintiffs have also indicated that they do not oppose expenditures in the Citrus area, which is not included in this cost breakdown.

nothing to hinder their defense of this action. Therefore, the motion to dismiss for laches must be denied.

## II.

### FAILURE TO STATE A CLAIM

The federal defendants have also moved this Court to dismiss this action under Rule 12(b)(6), F.R.Civ.P., for failure to state a claim upon which relief can be granted. In pertinent part, Rule 12(b) states: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

The defendants introduced no new evidence, but rested on the pleadings and the record. For summary judgment to be proper, the Court must construe the pleadings liberally in favor of the party against whom the motion is made, and the motion should be granted only where the moving party is entitled to judgment as a matter of law and the record clearly shows that no genuine issue of material fact exists. *Dassinger v. South Central Bell Tel. Co.,* 505 F.2d 672 (5th Cir. 1974).

The record and pleadings in the case at hand clearly show that genuine issues of material fact do exist. Therefore, the motion to dismiss under Rule 12(b)(6) must be denied, reserving to the defendants the right to reurge same at trial as provided under Rule 12(h)(2). Accordingly,

IT IS ORDERED that the motion to dismiss be and it is hereby DENIED.