UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-5549
_____


NATIONAL ASSOCIATION OF
GOVERNMENT EMPLOYEES, ET AL.,

                                    Plaintiffs-Appellants,

                    versus

CITY PUBLIC SERVICE BOARD OF
SAN ANTONIO, TEXAS, ET AL.,

                                    Defendants-Appellees.

_____

Appeal from the United States District Court for the
Western District of Texas
_____

(December 6, 1994)


Before JOHNSON, GARWOOD and JONES, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiffs-appellants Eustacio B. Diaz (Diaz), Guillermo R. Gaona (Gaona), and the National Association of Government Employees (collectively Plaintiffs) brought this putative class action against defendant-appellee the City of San Antonio, Texas, acting by and through the City Public Service Board (CPS). In 1977, Plaintiffs filed charges with the Equal Employment Opportunity Commission (EEOC), alleging that CPS discriminated against its Mexican-American and Mexican alien workers on the basis of their national origin in hiring, promotion, discipline, and other terms

and conditions of employment.[1]  After efforts at conciliation failed in 1980, the EEOC referred the case to the Department of Justice and informed Plaintiffs that the Department of Justice would either notify them of its intention to prosecute the case or issue a right to sue letter.  Nothing more happened until late 1989, when Plaintiffs determined that the Department of Justice had no record of their case, obtained a right to sue letter, and filed this suit in the district court below.  Plaintiffs alleged violations of Title VII, 42 U.S.C. §§ 1981 and 1983, and the Texas constitution.  CPS moved to dismiss the Title VII claim on the basis of laches and to dismiss the section 1981 claim either on summary judgment or for failure to state a claim on which relief may be granted.  The magistrate judge to whom the case had been referred recommended that both these motions be granted and in addition recommended denial of class certification and dismissal with prejudice of Plaintiffs' Title VII claims and dismissal without prejudice of their section 1981, section 1983, and state law claims.  The district court adopted the recommendation of the magistrate judge, and Plaintiffs appeal that judgment.  We find no error and therefore affirm.

### Facts and Proceedings Below

Although the present suit was filed November 29, 1989, the controversy began more than twelve years earlier.  On February 18, 1977, Plaintiffs filed employment discrimination charges with the

---

[1]     The original union complainant was the American Federation of State, County, and Municipal Employees (AFSCME).  In July 1982, CPS employees left AFSCME to join the National Association of Government Employees (NAGE).

EEOC, alleging that CPS discriminated against Mexican-Americans and Mexican aliens in hiring, promotion, job classification, and other terms and conditions of employment.[2] The EEOC issued a Reconsideration of Determination on October 31, 1979,[3] in which it found that there was reasonable cause to support some of Plaintiffs' allegations with respect to hiring and promotion.[4] The

---

[2] Specifically, Plaintiffs complained of:

"(a) Non-job-related educational requirements.

(b) Failure to establish educational job-related training and apprenticeship programs for upward mobility.

(c) Intimidation and harassment of Mexican-Americans and Mexican Aliens/I-151 . . .

(d) Failure to establish a job-posting policy of all job vacancies.

(e) Failure to establish a non-derogatory ethnic/racial slurs policy. . . .

(f) Failure to provide equal opportunity to Mexican-Americans and Mexican Aliens/I-151 employees as a class who apply for loans through the employer's credit union.

(g) Failure to establish a wages/conditions/grievances committee to include an equal number of Mexican-Americans and Mexican Aliens/I-151 members.

(h) Failure to establish and [sic] equal sick and vacation leave policy. . . ."

In its Reconsideration of Determination of October 31, 1979, the EEOC found with respect to these charges: that it did not have jurisdiction to consider charge (f); that there was insufficient evidence to support a reasonable cause finding as to charges (b), (c), (d), (g), and (h); and that there was sufficient evidence to support a reasonable cause finding as to charges (a) and (e).

[3] This document superseded a letter of determination the EEOC had previously issued on March 30, 1979.

[4] *See supra* note 2. Specifically, the EEOC found:

parties then attempted conciliation, but that effort failed. On June 24, 1980, the EEOC formally informed Plaintiffs in writing that conciliation was unsuccessful, that no further efforts to conciliate would be made, and that it was referring their charges to the Department of Justice for review in anticipation of a possible enforcement action.

Although Plaintiffs retained counsel to represent them in August 1980 and have been represented by counsel continuously since that time,[5] no further action was taken in the case. The attorney

"1.  Mexican-Americans are not hired into the unskilled and semi-skilled levels of Respondent's work force at a rate proportionate to their availiability [sic] in the relevant labor market;

2.  Mexican-Americans, as the result of Respondent's hiring policies, are relegated to the lowest job classifications within Respondent's facilities;

3.  Respondent has failed to establish and/or enforce a policy which prohibits the use of ethnic or racial slurs; and

4.  Respondent utilizes non-job-related educational requirements as prerequisites for employment and job advancement;

5.  [withdrawing certain earlier findings] . . . .

6.  . . . .  a.  Mexican-Americans who are employed as utility workers at Respondent's Gas and General Construction Division are not provided equal opportunities for promotion to the main crew foreman positions."  [On April 3, 1980, "the main crew foreman positions" language was changed to "the various supervisory/foreman positions that require direct supervisory responsibility over the Utility Workers"].

[5]  Plaintiffs have been represented by at least five separate attorneys since August 1980.  Their initial two attorneys represented them from 1980 until 1983, when they were replaced by another attorney who represented them until 1987.  He in turn was replaced by another attorney, who was succeeded in 1988 by still another who represented them until 1989, when Plaintiffs' current

who represented Plaintiffs from 1983 to 1987 did call a press conference in San Antonio during September 1984 at which he "accused the EEOC of failing to move against CPS after finding evidence of discrimination" and announced that he would file suit against CPS in four to six weeks. However, no suit was filed at that time. In 1989, Plaintiffs contacted the Department of Justice to determine where the case stood. The Department of Justice informed them that it had no record of a referral from the EEOC and therefore had not made any review of the case. Plaintiffs thereafter requested and received right to sue letters from the EEOC and filed this suit on November 29, 1989. They alleged causes of action under Title VII and section 1981. In addition, they moved for certification of the suit as a class action. A subsequent amended complaint added claims under section 1983 and the due course of law and equal protection provisions of the Texas constitution.

On February 8, 1990, CPS moved to dismiss, claiming that it was not a suable entity separate and apart from the City of San Antonio. Plaintiffs requested and were ultimately granted leave to file an amended complaint to name the City as defendant. On March 8, 1990, CPS moved to dismiss Plaintiffs' section 1981 claims either on summary judgment or for failure to state a claim on which relief may be granted. While that motion was pending, the magistrate judge to whom the case had been assigned granted the

---

attorney of record took over the representation. Still another attorney apparently also represented Plaintiffs from 1982 to 1984.

parties an extension of time to conduct further discovery on the issues of laches and class certification. On November 15, 1991, CPS moved to dismiss Plaintiffs' Title VII claims on the basis of laches.

The magistrate judge considered all these motions and entered his report and recommendation on January 30, 1992. He recommended that the district court dismiss Plaintiffs' Title VII claims on the basis of laches, finding that the long delay in filing suit "was manifestly unreasonable, inadequately explained and inexcusable" and had substantially prejudiced CPS's ability to conduct an adequate defense. The magistrate judge also recommended that the motion to dismiss Plaintiffs' section 1981 claims be granted and that that claim be dismissed without prejudice. As to the section 1981 claim, the magistrate judge reasoned: (1) that most of Plaintiffs' allegations (e.g., the tolerance of racial and ethnic slurs in the workplace, discriminatory disciplinary practices) were not cognizable under section 1981; (2) that the discriminatory hiring claims were not properly analyzed under section 1981 because "[Plaintiffs] do not contend that anyone was denied employment with CPS because he or she is Mexican-American"[6]; and (3) that Plaintiffs' pleadings and proof with respect to their discriminatory promotion claims failed to show the denial of an opportunity for a new and distinct employer-employee relationship as required by *Patterson v. McLean Credit Union*, 109 S.Ct. 2363

---

[6] The magistrate judge found that "[t]heir claim is better described as one of discriminatory placement at the time of hiring."

6

(1989).

The magistrate judge also recommended that any request to amend the complaint to plead sufficient facts not be allowed.  He reasoned that, not only had Plaintiffs already been granted leave to file a second amended complaint after CPS moved to dismiss the section 1981 claim for failure to state a claim, but that the summary judgment evidence established that Plaintiffs could not amend their complaint to state a section 1981 claim.  Referencing Plaintiffs' answers to interrogatories, the magistrate judge found only two CPS employeesSQAlejandro Ramirez and Jesse TelloSQas to whom the responses could be construed to allege a denial of promotion within the applicable statute of limitations.  The magistrate judge found nothing in the summary judgment evidence to show that either of these men were in fact denied promotions within the limitations period or to establish that the duties, compensation, and benefits of the jobs for which they were allegedly denied promotion created a new and distinct relationship with the employer.  In contrast, the magistrate judge noted that CPS had come forward with evidence to show that Ramirez had been promoted in 1986 and that Tello had declined three promotions in the late 1970s and early 1980s.  Similarly, the magistrate judge found that only two of Plaintiffs' affidavits could be construed to demonstrate a denial of promotion.  Assuming in the absence of evidence that these claims arose within the two-year statute of limitations, the magistrate judge found that one of the affiants complained primarily of sexual harassment, not national origin discrimination, and that the other failed to show that the

7

promotion he was denied would have created a new and distinct employment relationship.

Finally, with regard to Plaintiffs' motion for class certification, the magistrate judge found that there were only eleven putative class members whose claims of discrimination were tied to events occurring within the two-year statute of limitations period. He found this number insufficient to satisfy the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1). He therefore recommended denial of class certification and dismissal of Plaintiffs' section 1983 and state law claims without prejudice.

Over Plaintiffs' objections, the district court adopted the magistrate judge's findings and recommendations on February 24, 1992. It therefore denied class certification and dismissed Plaintiffs' Title VII claim with prejudice and their section 1981, section 1983, and state law claims without prejudice. Plaintiffs now appeal that judgment.

### Discussion

I. Appellate Jurisdiction

At oral argument, Plaintiffs for the first time contended that this Court lacks jurisdiction to hear their appeal because the district court's judgment is not final. With limited exceptions not relevant here, we are empowered to review only final decisions of the district courts. 28 U.S.C. § 1291. A decision is "final" when it "dispose[s] of the entire controversy and leave[s] nothing further for the court to do in the cause." *Anastasiadis v. S.S. Little John*, 339 F.2d 538, 539 (5th Cir. 1964). In the present

case, Plaintiffs contend that the district court's order is not final because it did not dispose of what they assert is a Title VI claim included in their second amended complaint. We are unpersuaded by this argument because we conclude that, to the extent that Plaintiffs' second amended complaint can be construed to assert a claim under Title VI, they have abandoned that claim.

We faced a similar situation in *Vaughn v. Mobil Oil Exploration and Producing Southeast, Inc.*, 891 F.2d 1195 (5th Cir. 1990). There we were confronted with a judgment that, although purporting to be final, failed to account for a cross-claim of the appellee. Addressing the finality requirement, we advocated a practical interpretation that looked to the intention of the district court. *Id.* at 1197. We stated that, if the judgment reflects an intent to dispose of all issues before the district court, we will characterize that judgment as final. *Id.* With those principles in mind, we held that the appellee had effectively abandoned its cross-claim by failing to pursue it before the district court.[7] *Id.* at 1198. We explained,

> "Ample authority exists that trial courts will not rule on claimsSQburied in pleadingsSQthat go unpressed before the court. . . . We can only construe appellee's failure to urge its claims before the district court as an intention to abandon that part of its case. . . . The fact that the December judgment did not mention appellee's cross-claim is neither here nor there; appellee's own behavior caused its claim to lapse." *Id.*

Because the district court's judgment disposed of all live issues then before it, we held that it was an appealable final judgment.

---

[7]     To the same effect, see *Chiari v. City of League City*, 920 F.2d 311, 314 (5th Cir. 1991); *Jones v. Celotex Corp.*, 867 F.2d 1503, 1504 (5th Cir.), *cert. denied*, 110 S.Ct. 260 (1989).

9

*Id.*

*Vaughn* is directly applicable here. Plaintiffs' invocation of Title VI in their lengthy second amended complaint is properly characterized as passing at best.[8] They mention it only twice, once in the paragraph invoking federal jurisdiction and again in conjunction with their claim for relief under Title VII. Both these references do no more than mention Title VI; the only statutory citation provided in each instance is to Title VII. Plaintiffs requested no relief under Title VI. Nor can we infer assertion of a claim under Title VI from a properly pleaded Title VII claim; the two causes of action require different elements of proof. *See Guardians Association v. Civil Service Commission*, 103 S.Ct. 3221, 3235 n.1 (1983) (Powell, J, concurring in the judgment)

---

[8]    Plaintiffs' original complaint asserted claims under Title VII and section 1981. It contains no mention of Title VI. After CPS moved to dismiss on the basis, *inter alia*, that it was not suable apart from the City, Plaintiffs, on February 23, 1990, moved to file a "first amended complaint" in order "to name as an additional Defendant the City of San Antonio." This motion was apparently never acted on. On March 16, 1990, Plaintiffs filed an "amended motion" to file a "first amended complaint," stating this was to correctly name the CPS and "to assert additional causes of action," none of which were in any way described or referenced. No action on this motion is reflected by the record. The docket sheet reflects that Plaintiffs tendered a "first amended complaint" on March 19, 1990, but it was never filed and is not in the record.
    On July 29, 1990, Plaintiffs filed their "amended motion for leave to file Plaintiffs' second amended complaint," which states that its purpose is to amend the first amended complaint "to add the Title VII charge by Eustacio Diaz." This motion was granted, and on August 23, 1991, Plaintiffs filed their "second amended complaint." This complaint asserts claims under Title VII and section 1981, as did the original complaint; it also asserts claims under the due process and equal protection clause of the Fourteenth Amendment and "the due course of law and equal protection provisions of the Texas Constitution," none of which claims were included in the original complaint.

(stating that "[s]even Members of the Court agree that a violation of [Title VI] requires proof of discriminatory intent"). Further, the complaint fails to allege the essential elements of a Title VI claim.[9]

We also note that defendant-appellees' pleadings, motions, and briefs below made no reference to any Title VI claim. The magistrate judge's report and recommendation makes no such reference, and its description of Plaintiffs' suit includes no mention of Title VI. Plaintiffs' response to appellees' motions did not mention Title VI,[10] nor did Plaintiffs' objections to the magistrate judge's report and recommendation. Plaintiffs *never* suggested to the district court (or to the magistrate judge) that they had any claim, under Title VI or otherwise, not fully addressed and disposed of.

Given these circumstances, we think it reasonable to infer that the district court did not believe Plaintiffs had asserted a claim under Title VI. *Cf. In re Pan American World Airways, Inc.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a

_____

[9] A cause of action under Title VI requires (1) that the defendant have received federal financial assistance the primary objective of which is to provide employment (2) that was applied by the defendant to discriminatory programs or activities. 42 U.S.C. §2000d-3.

[10] For example, Plaintiffs' fifty-four-page brief, filed below November 20, 1991, contains no mention of Title VI and describes the suit as "an action . . . brought pursuant to Title VII of the Civil Rights Act of 1964 (hereafter 'Title VII'), 42 U.S.C. Section 2000e, et seq., and 42 U.S.C. Section 1981 (hereafter 'Section 1981')."

way as to afford the district court an opportunity to recognize and rule on it.") (footnote omitted). In disposing of all Plaintiffs' other claims, therefore, the district court undoubtedly believed that it was disposing of the entire case before it. As in *Vaughn*, "[n]othing in the district court's disposition suggested that judgment was incomplete. Indeed, the judge closed the case. The clerk . . . entered judgment. The parties went home. In all respects, and to all parties, judgment was final." 891 F.2d at 1197-98. Such is the case here.

Other circumstances surrounding this case further support our conclusion that any Title VI claim was abandoned. That Plaintiffs instigated this appeal and invoked this Court's jurisdiction pursuant to 28 U.S.C. § 1291 suggests that they themselves believed the district court's judgment to be final. Neither of the parties addressed the Title VI issue in their original briefs.[11] Indeed, Plaintiffs' counsel admitted that he only realized this "omission" while preparing for oral argument.

It therefore appears clear that no one associated with this case believed there to be a live Title VI claim when judgment was entered. We will not allow Plaintiffs to ambush this appeal by belatedly resurrecting a purported claim they completely failed to

---

[11] Plaintiffs' notice of appeal states that it appeals the district court's "final judgment." Plaintiffs' "appellants' brief" in this Court does not mention Title VI, and neither does appellees' brief. Plaintiff's "reply brief" in this Court states that the district court dismissed "all Plaintiffs' causes of action." No submission by either side prior to oral argument suggested otherwise. At oral argument, we granted the parties leave to file supplemental briefs addressing the jurisdictional issue.

12

pursue before the district court. Nor does the fact that Plaintiffs' case was disposed of on summary judgment change our conclusion. *Vaughn*, 891 F.2d at 1198. ("[T]he district court's disposition of the instant case . . . by way of grant of . . . summary judgment does not alter the fact of abandonment on appellee's part . . ."). The district court's order disposing of all live claims was thus an appealable final judgment, and we have jurisdiction to consider it. Plaintiffs' post-argument motion to dismiss the appeal is denied.

II. Title VII Claims: Laches

A. Standard of Review

Although Plaintiffs seem to concede in their original brief to this Court that the appropriate standard of review of the district court's determination with respect to laches was an abuse of discretion standard, they assert in their reply brief that *de novo* review is the applicable standard because CPS's laches motion was styled as a motion to dismiss. Because the district court was required to review the available evidence in order to determine whether to apply laches to the Title VII claim, this motion is more appropriately treated as one for summary judgment. This distinction does not affect Plaintiffs' argument, however, since the standard of review of a grant of summary judgment is also *de novo*.

It is settled that a district court enjoys considerable discretion in deciding whether to apply the doctrine of laches to claims pending before it. *Kennedy v. Electricians Pension Plan*, 954 F.2d 1116, 1121 (5th Cir. 1992). The issue before us is to

13

what extent that discretion is circumscribed or otherwise altered when the decision to apply laches is made within the context of a motion for summary judgment. Our review of the caselaw leads us to the following conclusion: to the extent that the facts relevant to laches are undisputed on summary judgment, the abuse of discretion standard applies. Put another way, as long as the district court applies the correct legal standard on summary judgment and does not resolve disputed issues of material fact against the nonmovant, its determination of whether the undisputed facts warrant an application of laches is reviewed for abuse of discretion.

We begin our analysis with a case in which this Court determined that the district court had abused its discretion in applying the doctrine of laches. In *Powell v. City of Key West, Florida*, although "[r]ecognizing full well that the defense of laches is one that is addressed largely to the discretion of the trial court," we nevertheless held that the granting of summary judgment on the basis of laches was improper because the defendants' motion for summary judgment was "completely lacking . . . a factual basis for applying this defense." 434 F.2d 1075, 1080 (5th Cir. 1970). We found that laches was improperly applied because, based on an overly generous reading of the movants' affidavits,[12] the district court had impermissibly resolved disputed issues of fact regarding prejudice, an essential element of laches,

---

[12] We also noted that the district court's decision was founded on affidavits that did not meet the verification requirements of Rule 56(c). *Powell*, 434 F.2d at 1079-80.

14

in favor of the movants.[13]  *Id.* at 1079-80.  We noted that "[e]ven were the affidavits of the [movants] adequate to raise an issue of fact as to prejudice, this is all they would have done because there is clear proof on behalf of the plaintiff from which the trial court could have found a complete absence of prejudice by reason of the delay."  *Id.* at 1080.  Thus, although the district

---

[13]    For example, in *Powell* the affidavit of movant's counsel read:  "[T]he City of Key West, Florida, had insurance coverage at the time the accident, which is the subject matter of this litigation, occurred, but the insurance carrier has denied coverage to the city and is not now defending the city in this lawsuit on the grounds of late reporting of the accident." *Powell*, 434 F.2d at 1077.  From this, the district court concluded that "the defendants have lost insurance coverage that otherwise would have applied to the plaintiff's injury."  *Id.* at 1079 (emphasis omitted).  We found this extension of the affiant's statement impermissible in the context of summary judgment:

> "It is impossible for the trial court to know from the document before it that the city had or had not lost insurance coverage, for, in fact, counsel did not even make such a statement of fact.  He stated only that the insurance carrier had denied coverage and was not defending the suit.  The trial court was not in a position to test the correctness of counsel's implied, although not expressed, conclusion that the city had lost coverage which it otherwise would have had. Moreover, there is no possible basis for the trial court to assume, since the city gave no notice to the insurance company until 1969, that, had it given notice within the four year statue of limitations, the insurance company would not, with equal justification, have declined to defend on the ground of a four year delay in giving notice under the policy.  There is nothing in this record to indicate that, had the city given notice a few days short of the four year statutory period, the city would have had the coverage which the trial court now found it lost by reason of the delay in filing this complaint."  *Id.*

In addition, we noted that the district court erred in finding that another affidavit submitted by the movant showed that the movant had lost the opportunity to hold third parties liable for any damages assessed against it in the suit.  *Id.* at 1080.

15

court had discretion to grant laches on motion for summary judgment, it did not have discretion to circumvent the requirements of Rule 56(c) by resolving genuinely disputed issues of fact material to laches.[14]

By contrast, when the district court has correctly applied the summary judgment standard, we have found no abuse of discretion in its determination as to laches. For example, in *Albertson v. T.J. Stevenson & Co.*, we applied the abuse of discretion standard in reviewing the district court's decision to bar plaintiff's claims on the basis of laches. 749 F.2d 223, 233 (5th Cir. 1984). Significantly, we noted that the material facts underlying defendant's summary judgment motion were undisputed. *Id.* Similarly, in *Kennedy v. Electricians Pension Plan*, 954 F.2d 1116 (5th Cir. 1992), a declaratory judgment action tried to the court on a stipulation of facts and submission of the record, *id.* at 1118, we upheld the district court's decision not to apply laches under the abuse of discretion standard. *Id.* at 1121.

We think this case falls squarely within the purview of the

---

[14] To *Powell*, compare *Fowler v. Blue Bell, Inc.*, 596 F.2d 1276 (5th Cir. 1979), *cert. denied*, 100 S.Ct. 671 (1980). In *Fowler*, we held that, despite the existence of undisputed facts regarding defendant's laches motion, the district court incorrectly found the doctrine applicable where the movant's summary judgment evidence as a matter of law did not satisfy the elements of laches. *Id.* at 1279-80. Specifically, we held that any time that elapsed during ongoing EEOC conciliation efforts could not be counted toward the calculation of the unreasonable delay element, *id.* at 1279, and that the defendant's assertion that key witnesses were no longer with the company, without an accompanying showing that they were currently unavailable to testify, was insufficient to show prejudice. *Id.* at 1279-80. More importantly for present purposes, however, we analyzed the case under the abuse of discretion standard. *Id.* at 1280. *Fowler* is therefore wholly consistent with our analysis here.

abuse of discretion standard. The material facts relevant to laches are not in genuine dispute. The length of the delay and the reasons for it are not controverted. The facts relevant to prejudice are likewise not contested. CPS does not dispute that it has records relevant to Plaintiffs' claims still on file; Plaintiffs' do not dispute that many of CPS's relevant witnesses are unavailable to testify. We now turn to the district court's determination that the material facts before it as to which there was no genuine dispute met the essential requirements of the laches defense.

B.  Application of Laches to Plaintiffs' Title VII Claims

"Laches is founded on the notion that equity aids the vigilant and not those who slumber on their rights." *NAACP v. NAACP Legal Defense & Educational Fund, Inc.*, 753 F.2d 131, 137 (D.C. Cir.), *cert. denied*, 105 S.Ct. 3489 (1985). The defense consists of three elements:  (1) a delay on the part of the plaintiff in instituting suit; (2) that is not excused; and (3) that results in undue prejudice to the defendant's ability to present an adequate defense. *Geyen v. Marsh*, 775 F.2d 1303, 1310 (5th Cir. 1985).

1. *Delay*

The district court in this case found that there had been a delay of nine years in bringing suit on the EEOC charges Plaintiffs filed in 1977. The district court correctly held that the period of time during which conciliation efforts were ongoing should not be counted against Plaintiffs in calculating the period of delay. *See Fowler*, 596 F.2d at 1279 ("[A]lthough the doctrine of laches may be available in some cases to bar the EEOC from bringing suit,

17

this bar arises only if the EEOC has delayed unreasonably *after* it has completed conciliation.") (emphasis in original). Neither party disputes that conciliation efforts were terminated in 1980, nor that suit was not filed until late 1989.

### 2. Inexcusability

The magistrate judge found, and the district court agreed, that Plaintiffs' delay in bringing suit was not excused. The magistrate judge based his determination as to inexcusability on the following undisputed facts: (1) Plaintiffs have been represented by counsel continuously since conciliation efforts were terminated in 1980; (2) the plaintiff union (and its predecessor), whose expertise in employment matters is presumed, was actively involved in the case from the time charges were filed with the EEOC in 1977; (3) Plaintiffs failed to take advantage of their right under the statute (42 U.S.C. § 2000e-5) to demand right to sue letters at any time after 180 days following filing of the EEOC charges; (4) Plaintiffs did not at any time from 1980 to 1989 make any inquiry with the Department of Justice or the EEOC as to the status of their claims; and (5) Plaintiffs' then attorney called a press conference in 1984, accusing the EEOC of failure to act and promising to file suit within six weeks, yet Plaintiffs did nothing at that time nor for five years thereafter to bring this suit.

Plaintiffs attack the inexcusability determination, advancing two interrelated arguments. First, they argue that their delay in filing suit was not inexcusable because they were relying on the administrative process. Second, Plaintiffs contend, in effect,

18

that they should not be faulted for the laxity of their various attorneys in pursuing this suit. Neither of these contentions has merit.

Plaintiffs contend that, as legally unsophisticated parties with few English skills, they cannot be assumed to be familiar with the administrative complexities of Title VII litigation.[15] This argument fails to explain why Plaintiffs' *counsel* did not pursue this litigation, or why Plaintiffs should not be charged with their counsels' neglect. "Under our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Irwin v. Veterans Administration*, 111 S.Ct. 453, 456 (1990) (citation and internal quotation marks omitted). That an attorney's conduct of the suit is inadequate may be grounds for a malpractice action against the attorney, but it is certainly no basis for requiring the defendant to pay the price of opposing counsel's dereliction. *See Link v. Wabash Railroad*, 82 S.Ct. 1386, 1390 n.10 (1962).

Plaintiffs' assertion that one of their attorneys died and another was suspended from practice are wholly unavailing. As to the former, the record contains no indication of when the attorney died, but it does show that while he was representing Plaintiffs they were also represented by other counsel. As to the latter, the

---

[15] We are puzzled by Plaintiffs' contention in their reply brief that they did not know that conciliation efforts had failed until 1989. Letters sent to Plaintiffs in 1980 from the EEOC clearly state that conciliation had failed and was terminated and that the matter was being referred to the Department of Justice.

record merely indicates that the attorney "was *eventually* suspended from the practice of law" (emphasis added); it does not indicate when the suspension occurred, and so far as the record shows the suspension could have come well after (or only shortly before) the time when other counsel had succeeded to the representation of Plaintiffs.[16]

Also significant in this respect is the ongoing and direct involvement of the union, which purports to represent Plaintiffs' interests in this suit. A labor union is assumed to have some degree of expertise in equal employment opportunity matters. *See Cleveland Newspaper Guild v. Plain Dealer Publishing Co.*, 839 F.2d 1147, 1154 (6th Cir.), *cert. denied*, 102 S.Ct. 234 (1988). Plaintiffs have not argued that the union did not know of its right to request right to sue letters nor explained why the union failed to take any action to pursue the Title VII claims after conciliation failed.[17]

In sum, we are unable to fault the conclusion of the magistrate judge and the district court that under the undisputed facts of record the delay in this case was inexcusable.

### 3. Prejudice

To support a determination of laches, there must be more than

---

[16]    Nor is there any indication of the length of the suspension or any suggestion that the suspension was in any way related to counsel's representation in this matter.

[17]    Plaintiffs allege that growing tensions between the membership and management of AFSCME, NAGE's predecessor, led them to join NAGE in 1982. We are unpersuaded that this fact either relieved AFSCME of its duty to pursue these claims or excused NAGE from failing to pursue them after 1982.

simply an inexcusable delay; the party asserting laches must also establish that it has been prejudiced by the delay, that is, that the delay has "cause[d] a disadvantage in asserting and establishing a claimed right or defense." *Matter of Bohart*, 743 F.2d 313, 327 (5th Cir. 1984). The requirement of demonstrating prejudice dovetails with the equitable nature of laches as a doctrine "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 64 S.Ct. 582, 586 (1944).

The magistrate judge found that "plaintiffs' inexcusable delay in filing this lawsuit has unduly prejudiced defendant and warrants the imposition of the laches defense." The magistrate judge's report further adequately warned of the necessity of timely filing properly specific objections to "the proposed findings, conclusions and recommendation" contained in the report and of the consequences of failing to do so. Plaintiffs' only objection to the prejudice part of the magistrate judge's report was the following:

> "5) Defendant only alleges and the Magistrate only found undue prejudice with regard to the allegations of discrimination during the period prior to November 29, 1989. Therefore as a matter of equity the Court should reject the recommendation to dismiss the lawsuit in its entirety and instead should allow Plaintiffs to proceed on the Title VII claims but deny any back pay for the period of undue prejudice prior to November 29, 1989."

We agree with CPS that this does not constitute an objection to the determination of prejudice respecting alleged discrimination prior to November 29, 1989. As the district court adopted the

21

magistrate judge's report and its findings and conclusions, Plaintiffs are now barred from challenging the prejudice determination as to alleged discrimination prior to November 29, 1989, absent a showing of plain error or manifest injustice. *See, e.g., Nettles v. Wainwright*, 677 F.2d 404, 410 & n.8 (5th Cir. 1982); *Partfait v. Bowen*, 803 F.2d 810, 811, 813, 814 (5th Cir. 1986); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988); *Tolbert v. United States*, 916 F.2d 245, 247 (5th Cir. 1990); *Edmond v. Collins*, 8 F.3d 290, 293 n.7 (5th Cir. 1993). *See also* 28 U.S.C. § 636(b)(1); Western District of Texas Local Rule 4(b). We find no plain error or manifest injustice. Indeed, we find no error.

The magistrate judge described CPS's evidence of prejudice as "unrefuted," "substantial," and "overwhelming," and we agree. Of the foremen and supervisors responsible for hiring and promotion during the period covered by the EEOC charges here at issue, nine had died, three were too ill to testify, and three had been terminated by CPS.[18] In addition, CPS submitted thirty-six affidavits of other foremen and supervisors who prepared performance evaluations during the relevant period. Of those who could remember the employee at all (and there were many who could not), most remembered either only the name or only a general description of the person as either a good or poor employee. Few remembered specifically why they had rated a particular employee in

---

[18] There is a presumption that employees whose employment was involuntarily terminated are hostile toward the employer. *See EEOC v. Firestone Tire & Rubber Co.*, 626 F.Supp. 90, 92 (M.D. Ga. 1985).

22

a particular way or the details of specific anecdotal events that Plaintiffs allege prove their discrimination claims.

Plaintiffs counter that the loss of witness testimony is irrelevant because records that allegedly demonstrate the pattern and practice of discrimination at CPS are still available. These records, however, only help Plaintiffs in proving a *prima facie* case of discrimination; they do nothing to alleviate the prejudice to CPS in attempting to articulate legitimate, nondiscriminatory reasons to rebut any inference of discrimination these records might raise. *See Texas Department of Community Affairs v. Burdine*, 101 S.Ct. 1089, 1094-95 (1981) (setting out the framework for shifting the burden of proof in Title VII disparate impact cases). In similar circumstances, other courts have found that the loss of witness testimony unduly prejudiced the defendant's ability to defend itself against employment discrimination charges. *See, e.g.*, *Cleveland Newspaper Guild*, 839 F.2d at 1154; *EEOC v. Alioto Fish Co.*, 623 F.2d 86, 88 n.3 (9th Cir. 1980); *EEOC v. Firestone Tire & Rubber Co.*, 626 F.Supp. 90, 93 (M.D. Ga. 1985). We think such is the case here and therefore find no error in the district court's determination of prejudice.

C. Dismissal of Title VII Claims in Their Entirety

Plaintiffs argue that, even if it was not error for the district court to apply the laches doctrine to their Title VII claims, the district court nevertheless abused its discretion by dismissing those claims in their entirety. They contend that the district court instead should have merely denied the award of back pay for the period before November 29, 1989, the day suit was

23

filed, because they have alleged that discrimination at CPS is ongoing and submitted statistical proof to support their allegations.

We are unpersuaded. As Plaintiffs acknowledge elsewhere in their brief, Title VII requires that parties exhaust administrative remedies before instituting suit in federal court. *See* 42 U.S.C. § 2000e-5(f)(1). The EEOC charges on which Plaintiffs' Title VII claims are based relate to events that happened in 1976 and 1977. Since then, as the magistrate judge found, the undisputed evidence shows significant changes in CPS's workforce and employment practices. In 1981, an affirmative action plan was adopted. In 1983, the CPS employment policy was revised to eliminate formal educational requirements for promotion to foreman or supervisor. CPS has thereafter used seniority in determining advancement. In 1986, CPS began posting job vacancies.[19] The percentage of Hispanics in supervisory positions at CPS has increased considerably faster than the percentage of Hispanics in CPS's entire workforce.[20]

It is well-settled that courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not

---

[19] The 1977 EEOC charge complained, among other things, of failure to post vacancies and "non-job-related educational requirements" such as the requirement of a high school degree for "promotion to the better paying positions of equipment operators or other better jobs."

[20] From 1975 to 1991, the percentage of Hispanics in the entire CPS workforce increased from 36% to 53%. During the same period, the percentage of Hispanic supervisors and foremen increased from 5% to 26%. There was undisputed evidence that the increase would have been faster but for the fact that CPS had a very stable workforce with very low turnover in these positions.

exhausted administrative remedies.  *Tolbert v. United States*, 916 F.2d 245, 247-48 (5th Cir. 1990) (per curiam).  We have held that "a judicial complaint filed pursuant to Title VII 'may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation *during the pendency of the case before the Commission*.'"  *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970) (emphasis added; citation omitted).  This is because "the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation."  *Id*.  Other courts have expressed the same thought.  "[The EEOC] charge, enlarged only by such EEOC investigation as reasonably proceeds therefrom, fixed the scope of the charging party's subsequent right to institute a civil suit.  The suit filed may encompass only 'the discrimination stated in the charge itself or developed in the course of a reasonable [EEOC] investigation of that charge."  *King v. Seaboard Coastline R. Co*., 538 F.2d 581, 583 (4th Cir. 1976) (footnote and citation omitted).  *See also Johnson v. General Electric*, 840 F.2d 132, 139 (1st Cir. 1988); *Oubichon v. North American Rockwell Corp*., 482 F.2d 569, 571 (9th Cir. 1973) (suit may include "reasonably related" noncharged "new acts *occurring during the pendency* of *the charge before the EEOC*") (emphasis added); *Moore v. Sunbeam Corporation*, 459 F.2d 811, 826 & n.38, 828 (7th Cir. 1972); *Smith v. Joseph Horne Co., Inc*., 438 F.Supp. 1207, 1213 (W.D. Pa. 1977); *Hubbard v. Rubbermaid, Inc*., 436 F.Supp. 1184, 1190-91, 1193-94 (D.C. Md. 1977); 2 Larson, *Employment Discrimination* § 49.11(c)(1) at 9B-16 ("if an [EEOC] investigation

has actually been conducted, most courts hold that the scope of the complaint is limited to the actual scope of the investigation").

Here, the charges were filed in February 1977, the EEOC undertook an investigation which was completed and resulted in an October 31, 1979, determination letter. Conciliation was attempted, but all such efforts were terminated by June 1980. Over ten years after the investigation was completed, and after substantial changes in CPS's employment practices and profile, this suit was filed. As we have held, this delay was substantial, inexcusable, and prejudicial, so as to bar by laches Plaintiffs' Title VII claims. In these circumstances, to allow the 1977 charges to be the basis of claims of *current* discrimination, without new EEOC charges, would be to effectively read out of Title VII the requirement of administrative exhaustion. This we decline to do.[21]

---

[21] *See also Equal Employment Opportunity Comm'n v. Alioto Fish Co.*, 623 F.2d 86 (9th Cir. 1980), in which the Ninth Circuit upheld the dismissal on the basis of laches of a suit brought by the EEOC itself. The Ninth Circuit rejected the argument that the dismissal should not have extended to the request for injunctive relief against discrimination allegedly continuing when the suit was brought:

"The EEOC also seeks injunctive relief against an alleged pattern and practice of discrimination that continued up to the time the action was brought in 1976. Prejudice from unreasonable delay may also hamper the defense of a claim alleging a pattern and practice of discrimination and may justify dismissal of an entire action. . . .

Such prejudice is particularly evident in this case. The district court found that the employment practices of Alioto and the local restaurant industry had significantly changed since the time of . . . [the] original charge. The defense to the claim of a pattern and practice of discrimination would require much of

III.  Section 1981 Claims

As to Plaintiffs' section 1981 claims, CPS moved to dismiss either on summary judgment or for failure to state a claim. Because the magistrate judge went beyond the parties' pleadings to examine the substantive evidence, the motion is treated as one for summary judgment.  *See* FED.R.CIV.P. 12(b).  We review a grant of summary judgment *de novo*.  *Exxon Corp v. Burglin*, 4 F.3d 1294, 1297 (5th Cir. 1993).  We apply the same standard as did the district court, that is, we will affirm if we find "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED.R.CIV.P. 56(c).

The moving party bears the initial burden of showing that there is no genuine issue for trial; it may do so by "point[ing] out the absence of evidence supporting the nonmoving party's case." *Latimer v. Smithkline & French Laboratories*, 919 F.2d 301, 303 (5th Cir. 1990).  To withstand a properly supported motion for summary judgment, the nonmoving party must come forward with evidence to support the essential elements of its claim on which it bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986).  If a rational trier could not find for the nonmoving party based on the evidence presented, there is no genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S.Ct. 1348, 1355-56 (1986).  We consider all evidence in the light most favorable to the nonmoving party.

the same unavailable evidence needed to defend the original . . . charge . . . .  The prejudicial delay by the EEOC tainted the entire action and justified its dismissal."  *Id*. at 89 (footnote omitted).

*Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 114 S.Ct. 171 (1993). Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; "the plaintiff [can]not rest on his allegations . . . to get to a jury without `any significant probative evidence tending to support the complaint.'" *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986) (citation omitted).

On June 15, 1989, the Supreme Court held that section 1981's guarantee of the right to make contracts did not extend to conduct occurring after the employer-employee contract was formed. *Patterson v. McLean Credit Union*, 109 S.Ct. 2363, 2372 (1989). Specifically, claims of discriminatory promotion practices were cognizable under section 1981 "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer . . . ." *Id.* at 2377. At the time Plaintiffs filed suit on November 29, 1989, therefore, this was the rubric under which their claims were to be analyzed.

In the Civil Rights Act of 1991, enacted November 21, 1991, Congress legislatively reversed *Patterson.* Section 1981 now specifically states that, "[f]or purposes of this section, the term `make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). However, this section is not to be given retroactive effect. *Rivers v. Roadway Express, Inc.,* 114 S.Ct. 1510 (1994); *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363,

28

1374 (5th Cir. 1992), *cert. denied*, 114 S.Ct. 1641 (1994).

The only issue before us, therefore, is whether the district court erred in its application of *Patterson* to Plaintiffs' section 1981 claims. The magistrate judge found Plaintiffs' pleadings inadequate to state a cause of action under section 1981. Moreover, he reviewed the summary judgment evidence and concluded that Plaintiffs could not maintain a class claim under section 1981 because their evidence showed only two class members whose claims conceivably showed a denial of promotion within the statute of limitations.[22] He therefore recommended that further leave to amend the complaint be denied.

Plaintiffs contend their evidence satisfies the *Patterson* standard. We disagree. The guiding principles in this area are well-established: "`[R]outine increases in salary and responsibility which are clearly part of an original contract of employment' do not signal a new employment relation. `It would be very odd to regard each rung on the career ladder as a different employment relation.'" *Uncle Ben's*, 965 F.2d at 1370 (citations omitted; alteration in original). The job descriptions that Plaintiffs offer to prove their section 1981 claims show no more than an orderly increase in salary, skill level, and responsibilities. Laborers are distinguished from workers in the better-paying manual occupations at CPS, including the foreman and

---

[22] The district court correctly applied Texas's two-year statute of limitations period to Plaintiffs' section 1981 and section 1983 claims. *Price v. Digital Equipment Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988) (section 1981); *Peter Henderson Oil v. City of Port Arthur, Texas*, 806 F.2d 1273, 1274-75 (5th Cir. 1987) (section 1983).

supervisor positions to which Plaintiffs specifically allege they are denied access, by level of training and experience.[23] *See id.* at 1371 ("Attainment of supervisory status does not alone create a new and distinct employment relation. . . . [T]he change from a non-supervisory to a supervisory position does not suffice by itself to create a new employment relation."). Nothing in Plaintiffs' evidence indicates that the denial of the promotions they sought amounted to a denial of the opportunity to form a new and distinct employment relationship.

Further, Plaintiffs have failed to offer evidence that CPS *intentionally* discriminated against them. Such proof is an essential element of a claim for relief under section 1981. *General Building Contractors Assn, Inc. v. Pennsylvania*, 102 S.Ct. 3141, 3150 (1982). Plaintiffs have produced no summary judgment evidence of intentional discrimination within the limitations period. Finally, the summary judgment evidence showed no claimed discriminatory acts within the limitations period respecting either of the two individual class representatives, Diaz and Gaona. As noted below, the district court did not abuse its discretion in

---

[23] The job descriptions on which Plaintiffs rely clearly show this progression. "Laborers (unskilled)" are categorized as "[w]orkers in manual occupations which generally require no special training . . . ." At the next level are "Operatives (semiskilled)" whose duties are to "operate machine or processing equipment or perform other factory-type duties of intermediate skill level which . . . require only limited training." At the top of the progression are "Craft Workers (skilled)," described as "[m]anual workers of relatively high skill level having a thorough and comprehensive knowledge of the processes involved in their work. . . . [U]sually receive an extensive period of training." Foremen and supervisors are included in the Craft Worker category.

denying class certification.

Plaintiffs also argue that they were given inadequate opportunity for discovery in order to respond to CPS's summary judgment motion. Although the basis of Plaintiffs' contention is somewhat unclear, their argument is unavailing in any event.

There are two possible bases for Plaintiffs' contention in this regard. First, Plaintiffs direct us to their response to CPS's motion to dismiss or for summary judgment, in which Plaintiffs argued, in the alternative, that they be allowed a continuance to conduct additional discovery pursuant to Rule 56(f). This response was filed on March 21, 1990. Discovery did not close until September 3, 1990. The district court's decision to allow a continuance under Rule 56(f) is reviewed only for abuse of discretion. *SEC v. Recile*, 10 F.3d 1093, 1098 (5th Cir. 1993). Given the conclusory nature of Plaintiffs' request for continuance, as well as the more than adequate time between the request and the close of discovery, the district court did not abuse its discretion in denying the motion. *See id.* ("[T]he request need not be granted when the party opposing the motion `simply rel[ies] on vague assertions that additional discovery will produce needed, but unspecified facts,' particularly when `ample time and opportunities for discovery have already lapsed.'") (footnotes and citations omitted; second alteration in original).

Second, Plaintiffs find error in the denial of their motion to reopen discovery, filed December 23, 1991. The stated purpose of this motion was to allow Plaintiffs further discovery in light of the adoption of the Civil Rights Act of 1991. Because, as

31

discussed above, the Act does not apply to this case, the district court's decision to deny the motion was, at most, harmless error. We will not consider other bases for reopening discovery that were not urged before the district court. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1163 (5th Cir. 1992).

We affirm the dismissal without prejudice of Plaintiffs' section 1981 claims.

III.  Section 1983 Claims

The magistrate judge recommended dismissal without prejudice of Plaintiffs' section 1983 claims *sua sponte*, reasoning that Plaintiffs' proof of these claims was insufficient to justify class treatment.  The district court agreed.  We could consider this issue waived on appeal because Plaintiffs have failed to adequately brief it.  *L & A Contracting v. Southern Concrete Services*, 17 F.3d 106, 113 (5th Cir. 1994).  In any event, the record not only amply supports the district court's decision but also contains adequate independent bases that justify affirmance.  *See Chauvin v. Tandy Corp.*, 984 F.2d 695, 697 (5th Cir. 1993).

Plaintiffs have neither pleaded nor offered proof of crucial elements of a section 1983 cause of action.  To prove a cause of action under section 1983 based on a violation of equal protection, Plaintiffs are required, as under section 1981, to demonstrate intentional discrimination; mere disparate impact will not suffice. *Washington v. Davis*, 96 S.Ct. 2040, 2047 (1976).  Plaintiffs have offered no such sufficient evidence as to any actions within the limitations period.  Moreover, the summary judgment record shows no claimed discriminatory acts within the limitations period

32

respecting either of the individual class representatives, and, as below noted, the district court did not abuse its discretion in denying class certification. Finally, a municipality such as the City of San Antonio cannot be held vicariously liable for the constitutional violations of its employees; to recover, Plaintiffs must demonstrate that CPS maintained an official policy or custom of discrimination. *Monell v. Department of Social Services*, 98 S.Ct. 2018, 2037-38 (1978); *Hamilton v. Rodgers*, 791 F.2d 439, 443 (5th Cir. 1986). This Plaintiffs have not done.

We therefore affirm the dismissal without prejudice of Plaintiffs' section 1983 claims.

IV. Texas Constitutional Claims

Plaintiffs alleged violations of the Texas constitution's due course of law, TEX. CONST. art. 19, § 1, and equal protection provisions. *Id*. art. 1, § 3a. Because we find that the district court properly dismissed all Plaintiffs' federal claims prior to trial, dismissal of their pendant state law claims without prejudice was well within the district court's discretion. *Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir. 1994).

V. Denial of Class Certification

The district court denied class certification as to the section 1981, section 1983, and state law claims on the ground that the putative class did not satisfy the numerosity requirement of Rule 23(a)(1).[24] To satisfy the requirements of Rule 23, Plaintiffs

---

[24] Although the district court did not address Plaintiffs' arguments with respect to class certification of their Title VII claims, it would be pointless to remand this issue for further consideration when we have already decided that the decision to

33

must demonstrate that "the class is so numerous that joinder of all members is impracticable."  FED.R.CIV.P. 23(a)(1).  The magistrate judge found only eleven putative class members who complained of events occurring within the two-year statute of limitations; these eleven did not include the named individual class representatives, Diaz and Gaona.[25]  Moreover, of the eleven claims within the two-year period, only two even arguably concerned denial of promotion or of initial placement on a promotion "track."[26]  We review the district court's decision to deny class certification for abuse of discretion.  *Walker v. Jim Dandy Co.*, 638 F.2d 1330, 1334 (5th Cir. 1981).

Plaintiffs argue that the district court erred because the class they propose to representSQall past, present, and future employees of CPS's Gas and General Construction and Gas Operations DepartmentsSQdoes satisfy the numerosity requirement.  As discussed

---

dismiss the Title VII claims on the basis of laches was correct.

[25]    The magistrate judge correctly noted that the filing of the putative class action tolls the running of limitations for all purported class members. *American Pipe and Construction Co. v. Utah*, 94 S.Ct. 756, 765-66 (1974).  The Texas tolling rule, as applicable here under *Board of Regents v. Tomanio*, 100 S.Ct. 1790, 1795 (1980), is the same. *Grant v. Austin Bridge Construction Co*., 725 S.W.2d 366, 370 (Tex. App.SQHouston [14th Dist.] 1987, no writ).  After class certification is denied, class members may choose to file their own suits. *Crown, Cork & Seal Co. v. Parker*, 103 S.Ct. 2392, 2397-98 (1983).

[26]    One of these, Barba, claimed denial of opportunity for a trainee position, but the magistrate judge noted that "Barba's affidavit contains no facts suggesting, and does not even generally allege, that he has been denied a trainee position because of his race."  As to the other, Raymond, who claimed she was denied a clerk job, the magistrate judge noted her statement that "I am part of this lawsuit because I think I am a victim of sexual harassment."

above, Plaintiffs cannot rely on disparate impact analysis to prove their section 1981 and section 1983 claims; they must show that CPS had the intent to discriminate. The relevant inquiry is the number of class members who can complain of particular acts demonstrating such intentional discrimination. Putative class members whose grievances are barred by the statute of limitations or who cannot allege specific instances of discrimination within the relevant time frame cannot be counted toward computation of the class. Because only eleven putative class members could complain of probative events within the statute of limitations, the district court correctly denied class certification.[27]

## Conclusion

For these reasons, the judgment of the district court is

AFFIRMED.

---

[27] *Boykin v. Georgia Pacific Corp.*, 706 F.2d 1384 (5th Cir. 1983), *cert. denied*, 104 S.Ct. 399 (1984), is inapposite. That was a Title VII case, in which *none* of the potential claims were barred by limitations or laches. We stated that the fact that the presumptively appropriate minority share of promotions was only twenty during the relevant period (none of which were filled with minorities) did not preclude the requisite numerosity as the largely statistically proved complaint included claims of all those who were intiially denied preferable jobs and it was impossible to identify which of those would have received the theoretically appropriate twenty promotions. Here, by contrast, all Title VII claims in this suit are barred. All other claims arising before November 29, 1987, are also barred, and any thereafter are restricted to intentional discrimination. Of the latter, there are at most only eleven, and of these only two are arguably promotion or promotion track claims (out of a workforce of over three thousand).

35