# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-30785
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
May 29, 2020

Lyle W. Cayce
Clerk

DONNA N. PARKER,

      Plaintiff - Appellant

v.

BENTELER STEEL TUBE MANUFACTURING CORPORATION,
incorrectly named Benteler Steel,

      Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:17-CV-1453

Before JOLLY, JONES, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

The plaintiff asserted claims against her employer of racial discrimination, retaliation, sexual harassment, and a failure to accommodate based on her disability. The district court granted summary judgment to the employer on all claims. We AFFIRM.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-30785

## FACTUAL AND PROCEDURAL BACKGROUND

The defendant Benteler Steel Tube Manufacturing Corporation is a company specializing in manufacturing and processing seamless hot-rolled steel tubes and seamless cold-drain steel tubes for the automotive, precision-engineering, construction, and energy-production/exploratory-drilling industries.  In June 2015, Benteler hired the plaintiff, Donna Parker, as a bar-saw operator in Shreveport, Louisiana.  Bar-saw operators start and oversee the automated cutting process.  The job involves changing out the 33.5-pound blade and operating a forklift or overhead crane.  Parker was the only female in the group of four operators.  Shortly after she was hired, Parker underwent a fitness-for-duty exam, in which she disclosed that she took a blood pressure medication.  As with other new employees, Parker began work on a 90-day probationary status.  Within her first two months at the company, she had already attended multiple trainings.  One of the other bar-saw operators was assigned to train her.

Parker alleges that her deficient performance was a result of not receiving training because her supervisor was discriminating against her.  She also claims that the man assigned to train her refused to do so because she had rejected his advances.  Per Parker's request, she was later assigned to a new trainer.  This did not improve her performance, though, and Parker continued to struggle performing basic tasks of the job.

On September 2, 2015, Parker's doctor sent a letter to Benteler informing the company that Parker's medication caused dizziness and frequent urination.  On September 15, Parker received a disciplinary report, and her probationary status was extended by four weeks.  On September 21, Benteler conducted its 90-day evaluation of Parker's work performance, and she received a score of 57 out of 100.  About a month later Parker filed her first charge with the Equal Employment Opportunity Commission.  Parker received

2

two additional employee-discipline reports. The disciplinary reports were issued due to multiple incidents where Parker refused to do the tasks assigned to her and due to her violating a co-worker's privacy by going through his emails and text messages on his phone.

On December 14, 2015, Parker was not at work because she was being treated at the hospital. The doctor's work-release form said she could return to work the next day with no restrictions. On December 15, Parker refused to operate the bar saw by herself, explaining that she could not run the overhead crane because she was on medication that caused dizziness. Parker met with the human resources department and was placed on unpaid administrative leave. She was told to see her doctor for an evaluation of whether she could perform the essential functions of the bar-saw operator job and whether accommodations were needed. Parker's doctor provided a letter in January 2016, stating that Parker could perform the essential functions of the job with reasonable accommodation — specifically, "easy access to a restroom." The doctor did not indicate whether accommodations were needed to aid Parker with her dizziness. So, on January 19, 2016, Parker underwent an additional fitness-for-duty evaluation with a different doctor. That doctor submitted a report to Benteler and explained that Parker had been uncooperative and had refused to share her medical history and other medical information. On March 16, 2016, Parker filed a second charge with the EEOC.

Benteler tried again to get a more detailed answer from Parker's primary physician, this time sending the doctor a letter with a more thorough explanation of the job requirements and pictures of the facility and equipment. The doctor did not respond. Benteler then sent Parker a final letter inquiring about her fitness for duty on March 23, 2016. Parker did not respond. On April 22, Benteler sent a letter to Parker notifying her that her employment

No. 19-30785

was terminated as of that day.  Parker filed a third charge with the EEOC on July 14.

On August 8, 2017, the EEOC dismissed all three of Parker's charges. Parker sued Benteler in the United States District Court for the Western District of Louisiana on November 6, 2017.  On May 10, 2019, Benteler moved for summary judgment, and the district court granted the motion.  Parker appealed.

DISCUSSION

Parker raises several claims under Title VII, 42 U.S.C. § 2000e *et seq.*, and under the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq*.  We address them in the order presented on appeal.

*I.    Racial discrimination and retaliation*

Parker asserts her termination was a result of racial discrimination, but she provides no factual or legal support for this argument.  Her amended complaint does not assert a racial discrimination claim and contains no allegations that could be construed as alleging racial discrimination.  Further, Parker testified in a deposition that she had three claims, which were based on sexual harassment, her disability, and retaliation.  Her failure to offer any reasoning or factual support for her claim causes us to conclude it is "wholly without merit." *See 16 Front Street, L.L.C. v. Mississippi Silicon, L.L.C.*, 886 F.3d 549, 561 (5th Cir. 2018).

Parker's appellate brief also refers to "retaliation" alongside racial discrimination.  Parker provides no factual or legal support for this claim either.  Her appellate brief reference is solely in a subheading.  Parker has abandoned her retaliation claim by not briefing the issue on appeal. *Davis v. Davis*, 826 F.3d 258, 266 (5th Cir. 2016).

## II.    *Sexual harassment*

The district court dismissed Parker's sexual harassment claim because Parker had failed to exhaust her administrative remedies.  Title VII mandates that a person must file a charge with the EEOC before filing suit in court.  42 U.S.C. § 2000e-5(e); *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846, 1851 (2019).  This is a claims-processing rule, not a jurisdictional one.  *Fort Bend Cnty.*, 139 S. Ct. at 1846.  Here, the district court reasoned that although Parker had filed three EEOC charges, none of those alleged a sexual harassment claim.  Indeed, the district court noted that Parker testified in a deposition that she never told EEOC about her sexual harassment claim.  On appeal, Parker does not contest that the EEOC charges failed to raise sexual harassment.  Nevertheless, she argues that the district court erred because a lawsuit may encompass allegations included in the EEOC charge and those that are developed "in the course of a reasonable investigation of that charge." *Weathers v. Marshalls of MA, Inc.*, No. 02-717, 2002 WL 1770927, *2 (E.D. La. July 31, 2002).  She argues that she gave the EEOC a handwritten note informing the agency of the sexual harassment claim.

Parker seems to be arguing that the sexual harassment claim was uncovered through a reasonable investigation.  "The suit filed may encompass only the discrimination stated in the charge itself or developed in the course of a reasonable EEOC investigation of that charge."  *National Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994) (quotation marks and alteration omitted).  Notably, though, it is not Parker's investigation or the discovery process that can broaden the scope of a charge.  *Id.*  It is the EEOC's investigation.  *Id.*  Parker seems to argue that her sexual harassment claim was uncovered through discovery during the district court litigation, which is not relevant to whether she exhausted her administrative remedies.

No. 19-30785

We agree with the district court that Parker did not exhaust her administrative remedies for this claim.

*III.   Failure to accommodate*

The district court based its dismissal of the failure-to-accommodate claim on the fact that Parker was not "qualified" for the bar-saw operator position.  Because the district court found that Parker was not qualified, its inquiry ended there. *Credeur v. La. Through Office of Att'y Gen.*, 860 F.3d 785, 792 (5th Cir. 2017).  On appeal, Parker does not address whether she was qualified for the position, and she has therefore abandoned any argument to the contrary.

AFFIRMED.