IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-41152
_____


EDWARD ARTHER GOMEZ,

                                        Plaintiff-Appellant,

                        versus

JONAS SAENZ, Individually and
as an Agent and/or Employee of
State Farm Insurance Company;
MIKE SANCHEZ, Individually and
as an Agent and/or Employee of
State Farm Insurance Company;
JEFFREY SMITH, Individually and
as an Agent and/or Employee of
State Farm Insurance Company;
STATE FARM INSURANCE COMPANY,

                                        Defendants-Appellees.
_____

Appeal from the United States District Court for the
Southern District of Texas
USDC No. B-97-CV-114
_____
                        November 1, 2000

Before JOLLY, JONES, and SMITH, Circuit Judges.

PER CURIAM:[*]

     Edward Gomez appeals the district court's grant of summary

judgment on his federal discrimination claims and state law

negligence, emotional distress, and tortious interference with

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

contract claims for defendants, Jonas Saenz, Mike Sanchez, Jeffrey Smith, and State Farm Mutual Automobile Insurance Company.[1]  We affirm.

I

Gomez began working for State Farm as an auto estimator on October 31, 1983.  He was employed in Harlingen, Texas, from 1983 until 1987, and worked in the Weslaco, Texas office before moving to the McAllen, Texas office from 1990 until his discharge in April 1996.  Gomez's duties as an estimator included inspecting damaged motor vehicles and providing estimates regarding the amount of damage and costs for repair.

Gomez claims that during his employment in Harlingen he was subjected to various racial epithets, including "pachuco," "chon," "chango," "grease monkey," "wetback," and "illegal."  He was, however, unable to provide the names of any person who used the epithets toward him.  Nevertheless, Gomez further argues that the harassment and ridicule increased after his transfer to McAllen.

On June 3, 1992, Gomez's attorney sent a letter to State Farm's president and to Jeffrey Smith's supervisor complaining about allegations of discriminatory conduct and a hostile work environment.  On June 18, 1992, State Farm replied to Gomez's

_____

[1]The individual appellees, Jonas Saenz, Mike Sanchez, and Jeffrey Smith, each served as Gomez's supervisor at different points during his employment with State Farm.

2

attorney, urging Gomez to take advantage of State Farm's "open door" policy and discuss specific instances of discrimination and harassment with the Regional Personnel Office.

In 1993, Gomez received a "below expected performance" evaluation. In both 1994 and 1995, he was given an "expected performance" rating. He received a salary increase in 1995. Gomez contends that over the next two years he was continually harassed by Appellees Saenz and Sanchez, who were then Gomez's supervisors.[2]

In April 1996, Gomez was fired by State Farm. Gomez was informed that his discharge stemmed from his inability to accomplish various job tasks and his inability to get along with co-workers, management, and third party vendors.[3] On September 14, 1996, Gomez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On May 19, 1997, he filed suit against the appellees, Saenz, Sanchez, Smith, and State Farm, in federal district court. Gomez's complaint alleged racial discrimination, hostile work environment, and retaliation under 42

---

[2]Specifically, Gomez claims that Saenz unjustifiably issued three written work performance warnings from December 1995 to June 1997. He also argues that Saenz and Sanchez would visit body shops, collect performance information, and use that information to reprimand Gomez.

[3]The specific incident that led to the termination of Gomez's employment was an alleged verbal outburst with a Van Burkleo Motors employee, during which Gomez asked a vendor, "Who do you think you are, God? . . . Do you think we need to kneel down before you?"

3

U.S.C. § 2000e (Title VII of the Civil Rights Act) and 42 U.S.C. § 1981 (Section 1981), intentional infliction of emotional distress, tortious interference with contract, and state law violations of negligent hiring, supervision, and retention.[4]

On October 10, 1997, after a period of discovery, the appellees moved for summary judgment. After a series of replies, responses, and continued discovery proceedings, the trial court granted the motion for summary judgment and dismissed the entire case on July 22, 1999.

## II

We review summary judgment motions under de novo review, applying the same standard as the district court. See Armstrong v. City of Dallas, 997 F.2d 62, 65 (5th Cir. 1993). To withstand a properly supported motion for summary judgment, a nonmoving party must present evidence to support the elements of its prima facie claim on which it bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 321-23, 106 S.Ct. 2548 (1986); National Association of Government Employees v. City Public Service Board of San Antonio, 40 F.3d 698, 712 (1994). If a rational trier of fact could not find for the nonmoving party based on the

---

[4]Gomez did not assign error to the trial court's dismissal of his negligence claims; therefore, those claims are barred from consideration by this court. See Cavallini v. State Farm Mutual Auto Ins. Co., 44 F.3d 256, 260 n.9 (5th Cir. 1995).

evidence presented, no genuine issue of fact for trial exists. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 584-88, 106 S.Ct. 1348 (1986). The question is not whether a mere scintilla of evidence exists in favor of the nonmovant; rather, the inquiry is whether the nonmovant could, on the strength of the evidence in the record, carry its burden on the essential elements before a reasonable jury. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251, 106 S.Ct. 2505 (1986). "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50.

We stress that "[c]onclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any significant probative evidence tending to support the complaint.'" <u>National Association of Government Employees</u>, 40 F.3d at 713 (quoting <u>Anderson</u>, 477 U.S. at 249). Instead, the nonmovant must move beyond the pleadings and designate specific facts to support a genuine issue for trial. <u>Stults v. Conoco, Inc.</u>, 76 F.3d 651, 656 (5th Cir. 1996).

We first address Gomez's federal claims in turn before analyzing his claims under Texas state law.

III

5

Gomez's Title VII claims against the individual appellees (Saenz, Sanchez, and Smith) are barred by Fifth Circuit precedent. See Indest v. Freeman Decorating Inc., 164 F.3d 258, 262 (5th Cir. 1999) (holding that, because a Title VII suit against an employee is actually a suit against the corporation itself, a party may not maintain a suit against both an employer and its agent as it would impose double liability). We will therefore address only his claim that State Farm violated Title VII and Section 1981 by discharging him, by subjecting him to a hostile working environment, and by retaliating against him for complaining about racial discrimination.[5]

A

Gomez alleges discriminatory discharge and retaliatory discharge under Title VII and Section 1981.[6] The district court

---

[5]Although Gomez has alleged Section 1981 violations by the individual defendants, he has failed to argue such violations in the briefs and has not presented any evidence linking any one of the individual defendants to such claims.

[6]Gomez's hostile work environment Title VII claim is barred by the statute of limitations. Under Title VII, an individual must first file a charge of discrimination with the EEOC within three hundred days of the alleged unlawful employment practice. 42 U.S.C. § 2000e(5)(e)(1). Gomez filed his charge with the EEOC on September 14, 1996. The concrete allegations Gomez makes all refer to events before 1995. As to the general allegation that a hostile work environment continued through the end of his employment, Gomez provides no evidence of this, not even the names of those who supposedly uttered racial epithets.

6

determined that Gomez failed to establish a prima facie case for either claim and, therefore, the court granted summary judgment on both claims in favor of appellees. We agree that Gomez has failed to present a prima facie case for either claim.

1

To establish a prima facie case of discriminatory discharge under Title VII and Section 1981, a plaintiff must show that: (1) he is a member of a protected group; (2) he possessed the qualifications necessary for the position he held; (3) he was discharged from that position despite his qualifications; and (4) he was treated less favorably than similarly situated non-members of the protected class. Daigle v. Liberty Life Insurance Co., 70 F.3d 394 (5th Cir. 1995); Nieto v. L&H Packing Co., 108 F.3d 621, 624 n.7 (5th Cir. 1997). The district court found that Gomez failed to establish the fourth element, and thus Gomez's discriminatory discharge claim could not survive summary judgment.

The record lacks any evidence to suggest that State Farm's conduct toward Gomez, including his discharge, was motivated by any factor other than his deficient performance. Gomez does not challenge as false the reasons given for his discharge. It is true that Gomez alleges that he was singled out for criticism by supervisors. He offers no evidence, however, to establish that non-minorities at State Farm were treated differently, or to show

7

in any other way that the basis given for his treatment and his discharge was pretextual. Gomez's deposition testimony clearly establishes that he had no personal knowledge as to whether his co-employees' work was subject to criticism and review. To establish discriminatory discharge, Gomez must show more than the fact that his work was subject to criticism. We have often emphasized that an employee's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief. See, e.g., Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 42 (5th Cir. 1996); Armendariz v. Pinkerton Tobacco Co., 58 F.3d 144, 152-53 (5th Cir. 1995); Portis v. First Nat'l Bank of New Albany, 34 F.3d 325, 329 (5th Cir. 1994); Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 268 (5th Cir. 1994). This is especially true where the nondiscriminatory reason for discharge is not effectively challenged. In sum, the evidence before the district court on summary judgment simply does not rise above unsubstantiated allegations and subjective accusations of discrimination. Thus, Gomez has failed to establish a prima facie case of race or national origin discrimination, and we affirm the district court's grant of summary judgment in favor of State Farm on this claim.

2

Gomez argues that his discharge was not only based on race discrimination, but that it was also in retaliation for his oral

and written complaints about being discriminated against. To establish a prima facie case of retaliatory discharge, a plaintiff must show that: (1) he was engaged in a protected activity; (2) he was subjected to an adverse employment action by the employer; and (3) a causal nexus existed between the plaintiff's participation in the protected activity and the adverse employment action. Scrivner v. Socorro Independent School District, 169 F.3d 969, 972 (5th Cir. 1999); See also Ray v. Iuka Special Mun. Separate School Dist., 51 F.3d 1246, 1249 (5th Cir. 1995). The district court found that Gomez failed to prove the first prong of the prima facie case--that he engaged in protected activity. The court found there was insufficient evidence to show that his alleged complaints of race discrimination were objectively reasonable.

We affirm the district court's ruling, although on alternative grounds. We find that Gomez failed to establish the third prong of his prima facie case--that there was a causal connection between his participation in protected activity and his discharge. No evidence was produced to even suggest that Gomez's discharge was a result of his complaint to State Farm. First, the letter to State Farm alleging a hostile work environment was written in June 1992, almost four years before Gomez's discharge in April 1996. This lapse of time between the alleged protected activity and the

9

employment decision fails to suggest any causal connection.[7] Moreover, the record is replete with evidence showing that Gomez was discharged from State Farm solely for his performance deficiencies. We have held that the fact that a plaintiff complains to his employer even "moments before the termination does not, absent other evidence, constitute sufficient proof that the termination was retaliatory." Seaman v. CSPH, Inc., 179 F.3d 297, 301 (5th Cir. 1999). Gomez fails to aver any evidence to present a genuine issue of fact on the issue of causation. We therefore affirm the district court's grant of summary judgment for the appellees on Gomez's retaliatory discharge claim.[8]

IV

In addition to his federal claims, Gomez also alleges state law violations of intentional infliction of emotional distress and

---

[7]While Gomez argues that his alleged verbal harassment and criticism were also sparked by his complaints to State Farm, this court has held that "[h]ostility from fellow employees . . . and resulting anxiety, without more, do not constitute ultimate employment decisions, and therefore are not the required adverse employment actions" for purposes of a Title VII retaliation claim. Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997). This is because "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995). Therefore, we address only Gomez's discharge for purposes of his retaliatory discrimination claim.

[8]Although Gomez references Section 1981 in his pleadings, he makes no specific argument under Section 1981. In his briefs he collapses that claim into his Title VII argument.

tortious interference with contract.  We affirm the district court's grant of summary judgment on both claims.

A[9]

To recover on an intentional infliction of emotional distress claim in Texas, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the conduct was "extreme" and "outrageous"; (3) the actions by the defendant caused the plaintiff's distress; and (4) the resulting emotional distress was severe.  Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993).  The district court dismissed Gomez's claim for emotional distress damages, finding that his claim was governed by a two-year statute of limitations under Texas law and was therefore barred.  See Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a).

We agree that, under Texas law, any events occurring before May 19, 1995, cannot be the basis of an intentional infliction of emotional distress claim by Gomez.  See Patin v. Allied-Signal, Inc., 865 F.Supp. 365, 369 (E.D. Tex. 1994), aff'd, 69 F.3d 1 (5th Cir. 1995).  We further find that Gomez has failed to present colorable evidence of "extreme and outrageous" conduct by State

---

[9]To the extent Gomez asserts his emotional distress claim against the individual defendants, we find no specific allegations or facts in the record to support such a claim.  In fact, the record reveals that Gomez cannot name a single individual who allegedly called him derogatory names or otherwise contributed to the alleged emotional distress.

Farm from 1995 to 1997 to survive summary judgment. As we have previously stated, "[l]iability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions." See Weller v. Citation Oil & Gas Corp., 84 F.3d 191, 195 (5th Cir. 1996) (quoting Ugalde v. W.A. McKenzie Asphalt Co., 990 F.2d 239, 243 (5th Cir. 1993)). As the district court noted, termination is insufficient to constitute "extreme and outrageous" conduct. See Wornick Co. v. Casas, 856 S.W.2d 732 (Tex. 1993). Therefore, Gomez's evidence, even if taken as true, is insufficient to state a claim for intentional infliction of emotional distress as a matter of Texas law. We next turn to Gomez's claim of tortious interference with contract.

B

After he was discharged from State Farm, Gomez obtained employment with West Point Lincoln Mercury on January 9, 1997. However, he was fired from that position two months later. Gomez alleges that State Farm tortiously interfered with his employment contract with West Point Lincoln Mercury by threatening to discontinue State Farm's business relationship with West Point unless Gomez was fired.[10]

---

[10]There is not a scintilla of evidence to suggest any individual defendant engaged in tortious interference.

12

The district court dismissed this claim, stating that "Gomez has presented no evidence that any of the Defendants engaged in any willful and intentional act of interference with regard to Gomez's employment at West Point." The district court was correct. It is true that two documents from the Texas Workforce Commission were produced during discovery in support of Gomez's claim.[11] Neither the record nor the briefs reflect what sort of records these documents are or whose statements purport to be thereon. In fact, the copies in the record are not fully readable. On the other hand, the Texas Workforce Commission records clearly reflect the reasons for Gomez's termination by West Point. The specific finding of the Workforce Commission states that Gomez was discharged from West Point because of his "inability to perform [his] assigned work to [West Point's] satisfaction." Moreover, West Point's deposition by written questions delineates specific instances of misconduct by Gomez that culminated in his discharge, including complaints by eight customers who are individually named in the document.[12] Gomez has offered no evidence to challenge these

---

[11]In the documents, one of the rationales given for Gomez's dismissal from West Point states: "Employer cannot prove allegations. Dismissed claimant only after threat of losing insurance companies account." Another document reads: "State Farm requested we make a change or they would pull account."

[12]West Point's deposition reveals that Gomez was warned both verbally and in writing about failing to keep customers updated on the status of their vehicles, taking too long on estimates, and

charges.   Gomez bears the burden to adduce evidence that would create material facts upon which a jury could rule for him, and this he has failed to do.   We therefore affirm the district court's grant of summary judgment on this claim.

V

We conclude that the district court's grant of summary judgment in favor of the appellees was correct on all claims. Gomez failed to establish a prima facie case under Title VII or Section 1981, did not present evidence of "extreme and outrageous" conduct to support a charge of intentional infliction of emotional distress, and failed to show a viable tortious interference with contract claim.   Accordingly, the district court's judgment is

A F F I R M E D.

---

neglecting to properly check vehicles upon delivery to customers.